BERG and another, Executors of BERG, *against* RADCLIFF
               and others, Executors of RADCLIFF.

A bond, or specialty, is not considered as a mere voluntary agreement,
   but as necessarily importing a valuable consideration, and the bond
   creditor may come into the Court of Chancery, to enforce pay-
   ment of it out of assets.
A devise to executors, with authority to sell the real estate of the tes-
   tator for the payment of his debts, applies as well to a joint and
   several bond, executed by him, as *surety* for his co-obligor, as to
   any other debts ; and this Court will enforce the performance of the
   trust in the executors, and compel a sale of the real estate, or so
   much thereof as may be necessary to pay such a bond of the tes-
   tator, as well as his other debts.
As between the obligors and obligee, in a joint and several bond, all
   the obligors are principal debtors, though, as between each other,
   they may have the rights and remedies resulting from the rela-
   tion of principal and surety.

*September 5th*    BILL, filed *February* 8, 1822, stated, that *William*
*and 14th*      *Radcliff*, deceased, in his lifetime, together with *John*
            *Radcliff*, executed a bond, dated *May* 1, 1805, jointly and
            severally, to pay to the plaintiffs' testator 500 dollars, at a
            day long since past.  That *W. R.*, at the time of his
            death, was seised of lands in *Dutchess* county, and of a
            considerable personal estate.  That by his will, dated *Oc-
            tober* 13, 1806, which created various trusts, he directed

his executors to sell his real and personal estate for the
payment of his debts and the legacies.   He devised to his
executors 750 dollars, in trust for his daughter, to be
raised out of his personal estate, and if that was not suffi-
cient, then out of the moneys arising from the sale of his
real estate ; and he empowered his executors, or a majority
of those who administered, to sell the whole, or any part
of his real estate, and apply the proceeds to the payment
of his debts and legacies ; and he appointed his four sons,
and *Moses Cantine*, his son-in-law, his executors.   The
testator died in *August*, 1813, leaving the bond due.   The
four sons acted as executors, and possessed themselves of
the personal estate, which was insufficient for the payment
of the debts, and some of them took possession of the real
estate, and received the rents and profits.   No interest had
been paid on the bond since *May* 1, 1815.   *Prayer*, that
an account may be taken of the debts due from the estate
of the testator, and of the personal estate.   That the per-
sonal estate be applied to the payment of the debts in a
course of administration ; and that the remainder of the
debts be paid out of the real estate, and that the same be
sold, for that purpose, and that all proper parties join in
such sale, and that an account be taken of the rents and
profits of the real estate, and for general relief.

The answer of *John Radcliff*, and *Peter W. Radcliff*,
two of the defendants, stated, that the testator executed
the bond as *surety* for his son *John R.*, the other obligor.
They admitted the bond ; that the testator died possessed
of a considerable real and personal estate ; that his four
sons proved the will, and took upon themselves the execu-
tion of it.   That the personal estate came to the possession
of *W. & J. R.*, as executors, and was sold by them, ex-
cept some articles of furniture, and the proceeds received
by them, and applied to pay debts, or to some of the pur-
poses of the will.   But that they could not state the parti-
cular amount received, or how it was particularly applied,

nor how much, if any, remained on hand, unapplied. That these two defendants received no part of the personal estate, except to the value of about thirty dollars each. That the testator, at his death, was indebted to each of these defendants, and his estate is indebted to them for responsibilities assumed since. That the testator, at the time of his death, was indebted to the defendant, *Jacob R.*, in 425 dollars and 11 cents, with, interest since the 7th of *May*, 1808 ; and *J. R.* has since assumed to pay for the estate 298 dollars and 29 cents, making, in the whole, 723 dollars and 40 cents, besides interest. That the testator died indebted to the defendant, *P. W. R.*, in the sum of 338 dollars and 63 cents, who had since paid for the estate 316 dollars and 79 cents, amounting to 655 dollars and 42 cents, besides interest. That among the debts so paid by these defendants, for the estate, was a bond executed by the testator, to *Levi Jansen*, for 166 dollars and 40 cents. That the defendant, *William R.*, has made large claims against the estate, which remain unsettled. That the defendants do not know of any claims or demands against the estate, which have not been paid, and for which they consider the estate liable, except the claims aforesaid, and the demand of the plaintiffs. The defendants described the real estate, and alleged that it would not, if sold, be more than sufficient to pay all the debts. That the defendant, *W. R.*, took possession of the real estate in *Dutchess* county, subject to the limited possession and maintenance of the widow and daughter of the testator under the will. That the lands of the testator, in *Essex* county, are wild and uncultivated, &c. &c.

The defendants insisted, that as the testator was a *surety* only in the bond to the plaintiffs' testator, the plaintiffs are not entitled to the extraordinary interference and relief sought by the bill, and ought to be left to their remedy at law. That the defendant, *John R.*, has become insolvent, and has been discharged from his debts under the insolvent

act. And these defendants submitted how far the estate of *W. R.*, the testator, was liable for the debt to the plaintiffs' testator; and that the direction contained in the will, relative to the payment of debts, and the authority given to the executors to sell, if the same would furnish a ground for the interference of this Court to direct a sale of the real estate for the payment of debts, did not furnish such ground for the payment of a debt of the testator as *a surety*, and that such was not the intention of the testator, nor ought such to be the construction of the will, &c.

September 5th. The cause was brought to a hearing on the bill and answer.

*F. A. Livingston*, for the plaintiffs. He cited *Maddock's Ch.* 438. 1 *Vesey*, 514. 1 *Ch. Cas.* 77.

*S. M. Hopkins*, contra. He cited *Str.* 738. 3 *Bro.* 12. 1 *Vesey*, jr. 54. *Prec. in Ch.* 475. 2 *Term Rep.* 366. per *Buller*, J. 1 *Equity Cas. Abr.* 93, (I.) 2 *Vernon*, 393. 3 *Atk.* 91. 2 *Ch. Cases*, 22. 10 *Johns. Rep.* 180. 312. 18 *Johns. Rep.* 396. 2 *Vesey*, 105.

THE CHANCELLOR. The testator, *William Radcliff*, charged his real estate with the payment of his debts, and directed his executors to sell so much of it as should be requisite for that purpose. The bond in question was executed by the testator, *W. R.*, as surety for his son. It was a joint and several bond, and was produced at the hearing. It appears very clearly, by the pleadings, and the admissions of the defendants therein, that the personal estate has been sold and appropriated, and that the sale of the real estate becomes necessary to discharge that bond, if it is to be deemed a charge upon the estate, and to be enforced in this Court.

But the two defendants who have answered, contend, that

*[margin: 1822. BERG v. RADCLIFF.]*

*[margin: Sept. 14th]*

the plaintiffs are not entitled to the interference and as-
sistance of this Court, as against a surety; and that the
authority given by the will to the executors, to sell the
real estate to pay debts, does not, by any sound construc-
tion, extend to the payment of debts due from the testator
in the character of surety.

The defendants are evidently mistaken on both these
points.

This is not the case of a voluntary agreement on the
part of the testator, which a Court of equity will not en-
force; and the cases cited by the counsel for the defendants,
as to that point, do not apply. It is a bond for the pay-
ment of a debt, and is founded on a valuable considera-
tion, which applies equally to each obligor. The surety,
by joining in the bond, becomes a principal debtor to the
obligor, and the debt is presumed to have been created
upon the credit given to the surety as well as to the prin-
cipal debtor.

In *Beard* v. *Nuthall*, (1 *Vern*. 427.) the Master of the
Rolls declared, that an agreement, though even voluntary,
if under seal, was to be supported and assisted in this
Court. So, again, in *Lechmere* v. *Earl of Carlisle*, (3 *P.
Wms*. 222.) Sir *Joseph Jekyll* held, that a voluntary bond
was good against an executor or administrator, and must
be paid by the executor, unless some creditor was thereby
deprived of his debt. The observations of Lord *Hard-
wicke*, in *Williamson* v. *Coddington*, (1 *Vesey*, 514.) are
still more strong and pointed. " Undoubtedly," he says,
" a bill may be for satisfaction of a debt out of assets,
real and personal, which debt may be created voluntarily
by the testator; for though one cannot come into equity to
supply a defect in a voluntary bond without consideration,
or in many instances cannot come for specific performance
of such an agreement, *yet, if he has a specialty, he does not
want proof of a consideration*, but may come into equity
as well as law to have satisfaction of that debt, or that

specialty, out of assets." It is, therefore, quite unnecessary to dwell upon this point, for the bond here being given for a debt, cannot be considered as a mere voluntary agreement. Both the obligors are equally parties to one and the same contract, necessarily importing a valuable consideration.

There is as little colour for the suggestion, that a Court of equity will never enforce a bond or contract against a surety. A party who joins in a bond as surety, is as much bound in law and equity as the principal. Such contracts are of every day's occurrence in the business of life, and recognised as valid in every system of jurisprudence ; and it would be most extraordinary, and a very great blemish in the administration of justice, if the protection of a Court of equity was altogether denied to a creditor requiring equitable assistance against the surety. The surety is, in the contemplation of a Court of equity, as much bound as the principal by the terms of his contract ; and the great principle, in the cases referred to by the defendants' counsel, is, that if the creditor undertakes to *vary* the terms of the contract with the principal, by giving time, or otherwise changing it, without the concurrence of the surety, the surety is discharged. This is the extent of the doctrine ; and so long as the contract remains unvaried by any act of the creditor, he is as much entitled to equitable relief, when equitable relief becomes necessary, against the surety, as against the principal debtor.

Thus, in *Underwood* v. *Staney*, (1 *Ch. Cas.* 77.) the obligee of a bond filed his bill against the administrator of the principal, and against the surety, for relief, as the bond was lost. Though it was objected, that equity ought not to bind the surety, who was not bound at law, yet the Master of the Rolls decreed for the plaintiff ; and, on appeal, the Lord Chancellor affirmed the decree. This case was as early as 18 *Charles* II. ; and, afterwards,

in *Crosby* v. *Middleton*, in, 1710, (*Prec. in Ch.* 309.) we have a similar decision.   A bond was given by *A.*, and *B.* as his surety, and by mistake the name of the surety was omitted in the bond, though he had signed, sealed, and delivered it.   *B.* resisted payment of the bond, as being void against him, but the Lord Keeper said his defence would not do, and that equity would relieve against the mistake, and compel him to pay, unless he could show payment, and for which purpose an issue was allowed him.

There are two intermediate cases, which have been cited in opposition to this doctrine.   The first is *Simpson* v. *Field*, (2 *Ch. Cas.* 22.) which was the 31st and 32d *Charles* II., in which the Lord Chancellor refused to hold a surety in a recognisance bound in equity, who was not bound at law by the terms of the recognisance.   It was not the case of accident, or mistake, or fraud, but it was a case in which the recognisance was intentionally drawn so as only to bind him to pay a sum to be reported by *N. H.*, and the master died before any report was made.   The surety here could not be held bound in equity, without *varying* the terms of the contract; and this a Court of equity will not readily do, where a surety is concerned.   The case has, therefore, no manner of application.   The other case referred to, is that of *Sheffield* v. *Lord Castleton*, in 1700. (2 *Vern.* 393.)   It is differently reported in 1 *Eq. Cas. Abr.* 93. K. pl. 6., and the decision there mentioned is directly contrary to that given in *Vernon*, which I shall, however, assume to be the more correct account of the case.   The principle of the decision is the same as that in *Simpson* v. *Field.*   A recognisance was entered into, on the 5th of *May*, 1660, and it happened not to fall within the provision or terms of the statute made on the restoration of King *Charles*, for confirming certain judicial proceedings prior to the restoration.   The Lord Keeper dismissed a bill filed against the executrix of a surety in the recognisance, and which surety was not legally holden.

The recognisance was not within the reach of the healing statute. If this was the ground of the decree, (for no reasons are given,) it has no application to the case now before me; but it may be doubted whether the decision went upon any general principle governing the case of sureties; for, according to Mr. *Raithby's* note, it appears from the register's book, that the bill sought to subject *a particular fund* of 4000 pounds to the discharge of the recognisance, and the decree was, " that the Court saw no cause to relieve the plaintiff, or to subject any part of the 4000 pounds to his demand." No case is stated, says Mr. *Raithby*, and the principle to be extracted from this case seems to be only, that equity will not alter, vary, or *extend* the contract, in order to charge a surety, who, by the contract, *as it stands*, is not legally holden. The language of the books is, that, as against a surety, the contract cannot be carried beyond the strict terms of it.

The two cases of *Underwood* v. *Staney*, and *Crosby* v. *Middleton*, are, therefore, unaffected by any thing contained in these two intermediate cases; and if it were otherwise, yet the latter case of *Crosby* v. *Middleton* ought to govern, as being the latest; and it is confirmed by what Lord *Hardwicke* says, in *Skip* v. *Huey*, (3 *Atk.* 93.) " There are many cases," he observes, " where equity will set up debts extinguished at law, against a surety as well as against a principal, as where a bond is burnt, or cancelled by accident or mistake, and much stronger if the principal procure the bond to be delivered up by fraud." In the late case of *The East India Company* v. *Boddam*, (9 *Ves.* 464.) Lord *Eldon* gave relief to the creditor against a surety in a lost bond, when the principal was out of the jurisdiction of the Court, and observed, that in a joint and several bond, and as *between the obligors and obligee, all the obligors are principal debtors*, though, as between each other, they may have the rights and remedies resulting from the relation of principal and surety.

But it is said, that the authority given to the executors to sell the real estate to pay debts, is not to be deemed to apply to a bond debt, which the testator assumed as surety for another. There is certainly no ground, in reason or equity, for any such distinction. The debt, in this case, against the testator, is as valid as any other debt, and ought equally to be paid. The testator is supposed to mean all his subsisting legal debts; and did he not mean to pay when he gave the bond? What did he mean by entering into the bond, if he did not intend to see the obligee paid, and to make his property responsible for that payment? It would be dangerous to set up any such refinement, and make any such distinction between debts contracted as surety, and debts contracted as principal. It would tend to impair the sense of obligation justly growing out of every fair contract. Here was a trust created by the will, in the executors, for the payment of debts, and the real estate was made the subject of that trust; and as Sir *Joseph Jekyll* said, in a case already cited, every *cestuy que trust*, whether a volunteer or not, is entitled to the aid of a Court of equity, in order to avail himself of the benefit of that trust. It is the duty of this Court to see that the trust is fulfilled. The case of a present subsisting debt by a surety, has no analogy to that of a debt barred by the statute of limitations, and which is not considered as ordinarily included in a devise of lands, in trust to pay debts. A debt barred by the statute of limitations, at the time of making the will, is presumed to be paid. It is not considered to be a present subsisting debt, without some acknowledgment to that effect, and, therefore, it is not an unreasonable presumption, that the testator had no such demands in contemplation. But there is not the least foundation for such an inference in this case, and we cannot draw it without assuming the harsh, and, I think, unjust conclusion, that the testator never regarded a bond which he gave on behalf of his son, as creating any obligation upon him, either in law or conscience, to pay the debt.

I shall accordingly direct an account, and a sale of the real estate, to satisfy the plaintiffs' debt. The law, upon this subject, appears to me to be so well settled, that I should not have bestowed so much time upon the case, if the objections to the right of the plaintiffs had not been pressed with much earnestness by the defendants' counsel, and even incorporated into the answer, and that answer drawn by the defendants' themselves, who are members of the profession, and of a standing which entitles their pretensions to be well examined.

The following decree was entered : " It is declared, that the plaintiffs are entitled to the assistance of this Court, to enforce payment of the said bond, against the estate of the said *W. R.*, deceased, equally as if the said *W. R.* had been the sole obligor, and notwithstanding the said *W. R.* united in the said bond, and became a joint and several obligor as surety for *John R.*, the other obligor. And it is further declared, that the directions contained in the will of *W. R.*, relative to the payment of his debts, and the authority given to the executors to sell the real estate for the payment of debts, apply as well to the payment of the said bond, as to any other debt due and owing from *W. R.* at the time of his death, and the authority given in and by the said will, created a trust in the executors to sell the said real estate, or so much thereof as should be requisite to pay the debts of the testator, and which trust it is the duty of this Court to enforce in favour of and on the application of the creditors, or any of them. It is thereupon ordered, &c. that it be referred to a master, &c. to take an account of the principal and interest due on the bond in the pleadings mentioned, and an account of all the other debts and demands, if any there be, justly and legally chargeable upon the estate of *W. R.*, at the time of his death, including payments of any such debts, by any of the executors out of their own property ; and, if required by the defendants, to take and state an account of the personal estate

possessed and owned by *W. R.*, at the time of his death, and of the administration thereof by the defendants, or any of them, and how appropriated and applied; and, if required by either party, that he also take and state an account of the rents and profits of the said real estate, since the death of the testator, and received by the defendants, or either of them. *And inasmuch* as it sufficiently appears, in and by the pleadings, that the personal estate of *W. R.* has been sold and disposed of by the defendants, or some of them, and the proceeds, or the greater part thereof, applied to pay debts, or to some of the purposes of the will, and that the bond aforesaid, as well as other charges mentioned in the answer, as existing on the part of the defendants, or some of them, against the said estate, cannot be satisfied but by the sale of the real estate of the said testator, or a part thereof : It is thereupon further ordered, &c. that upon the coming in of the said report, and notice thereof, the said defendants, or a majority of them, as soon as may be thereafter, cause the real estate whereof *W. R.* died seised, or. so much thereof as the said executors, or a majority of them, shall deem sufficient to pay the principal and interest, to be reported due to the plaintiffs, together with the plaintiffs' costs of this suit, and which can be sold separately, without material injury to any of the parties concerned, to be sold at public auction, on giving six weeks' notice, &c.; and that one of the masters of this Court be associated with them in the management and direction of the sale; and that the said defendants may, if they should deem it best in their discretion, also, at the same time and place, sell so much more of the said real estate as shall be sufficient to satisfy the other demands, if any, so to be reported as aforesaid, and that the said sale be for cash, so far as may be necessary to raise the amount of the said principal, interest, and costs, due to the plaintiffs, and either for cash, or upon such terms, as to credit or security, as the defendants, or a majority of them, shall

deem advisable, in respect to the residue of the demands, mentioned in the answer aforesaid, and of which an account is to be taken by the said master ; and that the defendants, or a majority of them, together with the master, execute deeds, to be approved of by the said master, to the purchasers, on their complying with the terms of sale, and that the moneys arising upon the said sale, for cash, be paid to the master, and by him brought into Court, to abide the further order of the Court," &c.