## Case No. 14,908.

### UNITED STATES v. CUSHMAN.

[2 Sumn. 426.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1836.

EQUITY — SUIT AGAINST ADMINISTRATOR — INSOLVENCY—BOND FOR CUSTOMS DUTIES—SURETIES —JOINT JUDGMENT—RES JUDICATA.

1. Where a joint and several bond was given for duties at the custom house, and afterwards a joint judgment was obtained against all the obligors (the principal and sureties), and then, one of the obligors (a surety) died; and the survivors became insolvent; it was held, that the United States were entitled to maintain a suit in equity for the recovery of the debt out of the assets of the deceased judgment debtor, whose estate was also insolvent, in virtue of their general priority in cases of insolvency.

2. In such a case, as between the United States and the obligors on the duty bond, all of them are deemed principal debtors.

3. Where sureties bind themselves jointly and severally as principals in a bond, there is no difference, as to their liability in equity for the debt, between them and the principal debtor, for whom they are sureties.

[Cited in dissenting opinion in U. S. v. Price, 9 How. (50 U. S.) 105. Cited in Re Babcock, Case No. 696.]

4. Semble, that a joint judgment is no bar at law to a separate suit against one of the obligors on a joint and several bond, or against his personal representatives. The joint judgment only bars the joint remedy in such case, and not the several remedy.

[Cited in Trafton v. U. S., Case No. 14,135. Followed in Lawrence v. Vernon, Id. 8,146. Criticised in U. S. v. Price, 9 How. (50 U. S.) 92.]

[Questioned in Clinton Bank v. Hart, 5 Ohio St. 35. Cited in Gayer v. Parker, 24 Neb. 645, 39 N. W. 846; Kirkpatrick v. Stingley, 2 Ind. 273; Vanuxem v. Burr, 151 Mass. 389, 24 N. E. 773. Disapproved in Weil v. Guerin, 42 Ohio St. 304.]

Bill in equity, by the United States, against Samuel Cushman, administrator of John Abbott. The parties agreed to the following statement of facts: On 25th February, 1828, Willis Barnabee, with J. N. Sherburne and John Abbott as sureties, made their joint and several bond to the United States, in the sum of $2,400, conditioned to pay certain duties on or before the 25th August, 1829, due on goods imported by the said Barnabee. On 28th August, 1829, a joint suit against the said obligors was commenced, and judgment rendered thereon on the 8th October, 1829,

in favor of the United States, for $918.53 debt, and $27.06 cost. In May, 1834, the aforesaid Willis Barnabee applied for a discharge from the above-named judgment, in pursuance of certain insolvent laws of the United States—a hearing was had before the commissioners appointed under the said laws for the district of New Hampshire, and the result of this investigation was forwarded to the secretary of the treasury department. After which hearing and report, the secretary of the treasury forwarded to the said Barnabee a letter in the following words: "Treasury Department, June 18th, 1834. Sir, your case has been decided, and the warrant for your release from your debt to the government will be issued, and the duplicates of the same prepared and transmitted to the attorney of the United States for your district without delay. Signed, R. B. Taney, Secretary of the Treasury." On the same 18th of June, the secretary of the treasury forwarded to the district attorney of New Hampshire, a discharge in the following words: "To all to whom these presents shall come, I, Roger B. Taney, secretary of the United States, send greeting: Whereas Willis Barnabee, of Portsmouth, in the district of New Hampshire, has presented his petition to the secretary of the treasury of the United States, to be released from certain debts due by him to the United States on the 1st day of January, 1831; and a report in writing of the circumstances of the case having been transmitted to the said secretary by the commissioners of insolvency for said district, pursuant to the provision of the statute of the United States, passed the second day of March, 1831 [4 Stat. 467], entitled, 'An act for the relief of certain insolvent debtors of the United States.' And whereas I, the said secretary of the treasury, having maturely considered the said petition and report, and it being proved to my satisfaction, that the said Willis Barnabee was, on the first day of January, 1831, a debtor to the United States, in a sum of money which he is unable to pay; that he hath done no act fraudulently to deprive the United States of their legal priority, that he has not been guilty of any fraud, nor made any conveyance of his estate, real or personal, in trust for himself, or with an interest to defraud the United States, or whereby to expect any benefit or advantage to himself or family. Now, therefore, know ye, that I, the said secretary of the treasury, in consideration of the premises, and by virtue of the power and authority vested in me by the aforesaid statute, and by an act of congress, entitled 'An act in addition to an act for the relief of certain insolvent debtors of the United States,' approved the 14th day of July, 1832 [Id. 595], and by virtue of an act of congress, to revive and amend the aforesaid acts, approved June 7th, 1834 [Id. 676], do hereby decide to release the said Willis Barnabee from his said debt, upon condition that John N. Sherburne and John Abbott, the sure-

¹ [Reported by Charles Sumner, Esq.]

ties of the said Willis Barnabee, shall file with the secretary of the treasury, their consent, in writing, that the privileges of the said acts may be extended to him, the said Willis, without any prejudice to their liability; and provided that the right of the United States to have applied to the said debt all and every debenture certificate or certificates, applicable to the same, be not hereby relinquished, but on the contrary fully saved and reserved. Given under my hand and seal of office, at the city of Washington, this 18th of June, 1834, and of the independence of the United States the fifty-eighth. (L. S.) R. B. Taney, Secretary of the Treasury." The said discharge now is, and ever has been retained by the said district attorney. On 19th November, 1834, J. N. Sherburne, above-named, together with John E. Abbott, son, and sole heir of John Abbott, who deceased after the rendition of the afore-described judgment, signed a document showing their assent to the discharge of said Barnabee; which document was filed in the treasury department on 10th April, 1835, and is in these words: "Whereas Willis Barnabee, as principal, John N. Sherburne and John Abbott, as sureties, all of Portsmouth, district of New Hampshire, made their certain bond to the United States of America, for the security of certain duties; upon which bond the said United States have since obtained judgment. Whereas, also, the said Willis Barnabee has proposed to avail himself of the provision of certain laws of the United States for the benefit and discharge of persons insolvent. Now, therefore, we, the said John E. Abbott, son and sole heir of the above-named John Abbott, who is now deceased, do hereby assert and approve any discharge which said United States may give to said Barnabee; also consent that the right of the United States to have applied to the said debt all and every debenture certificate or certificates applicable to the same, be not by said discharge relinquished, but on the contrary fully reserved and saved to the United States, reserving our respective rights against said Barnabee and each other as sureties." On 26th August, 1829, Willis Barnabee surrendered to the custom house at Portsmouth, to the collector, two debenture certificates; one for $341.40, the other for $50.66, for the benefit of the government, and endorsed on each of them a receipt for the amount thereof, which sums, amounting to $392.06, at the time of rendering the aforesaid judgment, were not and have not since been allowed to the said Barnabee. The estate of John Abbott is insolvent. Samuel Cushman is administrator of the said estate, and has assets more than the amount claimed in the bill.

Mr. Hale, U. S. Dist. Atty.

Mr. Goodrich, for defendant.

STORY, Circuit Justice. This case has been already before the court in an action of debt, founded upon the joint judgment (referred to in the proceedings), and brought against the present defendant; and the court were then of opinion, that, as an action founded upon the joint judgment, it was not maintainable against the defendant, as administrator of Abbott; but, that at law the judgment survived exclusively against Barnabee and Sherburne. [Case No. 14,907.] The present bill in equity is brought to recover the amount of the same judgment out of the assets of Abbott in the hands of the defendant. The defendant admits assets sufficient to pay the amount due to the United States on the judgment; but he denies, that the United States, by reason of their legal priority, or otherwise, have any right or title whatsoever to satisfaction thereof out of the assets, under the circumstances of the present case. There is no dispute between the parties as to the material facts. It is admitted, that the original bond for the payment of duties was in its form joint and several, and was given by Barnabee as principal, and by Sherburne and Abbott, as his sureties; that the judgment was obtained against all the obligors on a joint suit in the lifetime of Abbott; that Barnabee and Sherburne are insolvent; and that the United States have received the sum of $392.06 in debenture certificates from Barnabee, which have not been deducted from the amount of the judgment.

The first consideration which arises, is, whether the amount of these debenture certificates ought to be deducted from the judgment debt. I have not the slightest doubt, that it ought to be deducted; for to this extent the judgment has either been satisfied, or the judgment was pro tanto originally taken for a larger amount than what was actually due. The argument for the United States seems to be, that it was properly matter of set-off in the original joint action; and not having been then insisted on, it cannot now be made of any avail. Now, whatever force there might be in the argument upon the ground of laches, if the present were a suit brought by any of the parties to the original judgment to be relieved against the same to the amount of the debenture certificate, upon which it is unnecessary to give any opinion, though I must say, that it would be difficult to convince a court of equity, that it ought not, under the circumstances, to give the relief, as the case of an omission of credit by mistake or accident; or, if treated as a set-off, in the nature of a counter demand, which might be, but was not necessary to be, set off in that suit; the argument can have no just application in the present case. The present suit is brought by the United States to enforce a claim against the defendant in equity; and it would be most extraordinary, if a court of equity should lend its aid to any party to recover any debt beyond what in conscience and truth is due to him. One of the fundamental rules in equity jurisprudence is, that he, who seeks equity, must do

equity. The debenture certificates, in truth, are to be deemed a part payment of the debt; which the United States were bound to give credit for; and it would be a fraud upon the sureties to set up a claim against them for the whole judgment debt, when it had been in part extinguished, and the United States must be presumed to have agreed to give a credit for the same pro tanto.

We come, in the next place, to the consideration of the point raised by the defendant, as to the release of Barnabee by the secretary of the treasury. I have already had occasion to express my opinion, that the release was inoperative in consequence of the conditions annexed thereto not having been complied with; for Abbott, the surety, in his lifetime never assented to it. and the assent of John E. Abbott, his son, is in no just sense the assent of his legal "representatives," if such an assent would have been a compliance with the condition. The main argument on behalf of the defendant is, that the release became, in the event, an operative discharge of Barnabee, notwithstanding it has not been delivered, and notwithstanding the condition has not been complied with; because (it is said) the secretary has required by the condition more than by law he was authorized to require; and also, because a literal compliance with it became impossible. The condition required is, that Sherburne and Abbott should consent to the discharge of Barnabee, without any prejudice to their liability. At the time of the making of the instrument, Abbott was dead; and, therefore, a literal compliance with its terms was impossible; and the secretary had no right, by law, to impose the condition. Besides; by the death of Abbott, he was discharged at law from the judgment; and it survived against the other obligors only. The assent of his legal representatives could not be required to the discharge, for by his death his legal liability was gone; and they were by law incompetent to give such an assent. Sherburne, the only surety, who is liable upon the judgment, has assented; and the condition by his assent had been complied with, as far as could be required by law. Such is the argument. The infirmity of the argument is, that it assumes, that if the condition annexed by the secretary is either impossible, or beyond what the law requires, or authorizes, the condition is void, and it leaves the release absolute. Now, that is the very matter in controversy. And my opinion is, that the release of the secretary, if it is to operate at all, must operate throughout. If he has exceeded his authority, the whole act is void, and not merely the condition. The condition is a condition precedent, and if impossible to be performed, the release does not take effect. If illegal to be required, still the release being to take effect only. when it was complied with, the whole instrument, in its original concoction, was invalid. But it does not appear to me, that the secretary has ex-

ceeded his authority in imposing the present condition. On the contrary, it was within the scope and objects of the laws, under which he acted. The act of March 2d, 1831, c. 61, § 4 [4 Stat. 467], authorized the secretary. when he was satisfied, that the debtor was insolvent, and had committed no fraud. to "compromise with the debtor upon such terms and conditions as he may think reasonable and proper, under all the circumstances of the case." A broader discretionary authority could scarcely have been given; and it has not, in any manner, been restricted by the subsequent acts, so as to touch the present condition. The amendatory act of July 14th, 1832, c. 227 [4 Stat. 595], extends the provisions to reach the present case; and further provides (section 3) that the debtor shall not be discharged "until it shall appear to the satisfaction of the secretary of the treasury, that the sureties of the debtor are unable to pay the said debt, and that they are entitled to the provisions of this act in like manner, as the said principal debtor shall be entitled to the same, or unless said sureties shall file their consent, in writing. with the secretary of the treasury, that the privileges of this act, and the act, to which this is an amendment, may be extended to their principal without any prejudice to their liability; or unless such discharge can and shall be given in such manner, as not to affect the legal liability of such sureties." It is apparent, that the secretary imposed the present condition with this directory clause immediately under his view. The act of June 7th, 1834, c. 45 [4 Stat. 676], further provides, that if any surety, or co-surety, of the debtor, shall be dead, "the consent of the legal representative or representatives of such deceased surety or co-surety shall be received, and entitle the applicant for relief in like manner as the consent of a living surety or co-surety would do, by the provisions of the 3d section" of the act of 1832. So, that the very case now in judgment has been expressly provided for, viz. that of a deceased surety. And there is no pretence to say, that if the legal representative of such surety might, or could, at law or in equity, be made liable for the debt, his assent to the discharge might not be required by the secretary, as a proper and reasonable condition of granting it.

The next question is, whether the United States are entitled to maintain the present bill, under the circumstances of the case, against the defendant, as a matter of equitable jurisdiction. I am of opinion, that they are. The estate of Abbott is insolvent; and, in a case of insolvency, the United States are, by virtue of the act of March 3d, 1797, c. 74 [1 Story's Laws, 464; 1 Stat. 512], entitled to a priority of payment out of the assets of the deceased debtor. In my judgment, there is no difference, as to the right of priority, whether the debt due to the United States is a legal debt, or an

equitable debt. Each is equally within the purview of the statute; and a bill in equity is the appropriate remedy to enforce this priority against the administrator. U. S. v. Howland, 4 Wheat. [17 U. S.] 108, 115; 1 Story, Eq. Jur. §§ 531–535.

The only real remaining question is, whether the death of Abbott operated to discharge him altogether from the original debt, both at law and in equity; for if his estate is liable in equity for the debt, it is wholly immaterial, how the matter would stand at law. The argument of the defendant is, that the present is the case of a surety, and against a surety a court of equity will take no step to enlarge his liability, or to make him liable, where he is already discharged at law. Generally speaking, this doctrine is true, and fully supported by the authorities. See 1 Story, Eq. Jur. § 164; Id. § 82. But the question is, whether it applies to the present case. This is not a case, where the plaintiff seeks to have a bond, or other contract, joint in its form, reformed, so as to make it joint and several against a surety, living, or dead. In such a case, a court of equity will not interfere, unless there is the most plenary evidence to establish the fact, that it was the intention of all the parties, that it should be several, as well as joint. But if such an intention is clearly established, courts of equity will enforce that intention, when there has been an omission to express it by accident, or mistake, or fraud, as well against sureties as against the principal debtor. Under such circumstances there is no distinction between the case of sureties and that of principals; for it is a mere specific performance of the original contract, as understood by all the parties. The true difference between principals and sureties is. that in the case of principals, courts of equity will ordinarily presume, that a contract, in form joint, was intended to be joint and several, as all are equally debtors. But in the case of sureties, courts of equity will presume nothing beyond what the positive facts substantiate; and if the contract is in form joint, they will not presume it to have been intended to be joint and several, unless upon distinct and satisfactory proofs to that effect. The cases of Devaynes v. Noble (Sleech's Case) 1 Mer. 564–568; Sumner v. Powell, 2 Mer. 36; Thomas v. Frazer, 3 Ves. 399, 402; Rawstone v. Parr, 3 Russ. 424. 539; Wiser v. Blachly, 1 Johns. Ch. 607: Berg v Radcliffe, 6 Johns. Ch. 302; Miller v. Stewart, 9 Wheat. [22 U. S.] 680; Hunt v. Rosmaniere's Adm'rs, 8 Wheat. [21 U. S.] 211, 212; Id. 1 Pet. [26 U. S.] 16; Weaver v. Shryock, 6 Serg. & R. 262. 264, 265,—fully recognize the general doctrine and the distinction, each of which indeed is so reasonable in itself, that as soon as it is enunciated, it carries with it its own intrinsic justification. But no reform whatever is required of the instrument in the present case. It is a bond joint and sev-

eral in its form, as is required by the duty collection act of 1799, c. 128, § 62 [1 Story's Laws, 627; 1 Stat. 673, c. 22]; and therefore it is the several, as well as the joint contract of each of the obligors. As between the obligors themselves, Sherburne and Abbott were the sureties, and Barnabee the principal debtor. But as between them and the United States, they were all principal debtors, jointly and severally liable as such by the general principles of law, as well as in equity. The reasoning of Mr. Chancellor Kent, in Berg v. Radcliffe, 6 Johns. Ch. 302, is entirely satisfactory and conclusive upon this point, if it admitted, as I conceive it does not, of any reasonable doubt.

The argument of the defendant proceeds upon the supposition, that if a bond, joint and several in form, is sued against all the obligors, and a joint judgment is obtained thereon, that joint judgment, though unsatisfied, ipso facto, extinguishes the several, as well as the joint obligation ex contractu. No authority has been cited, which supports such a doctrine even at law; and it is somewhat difficult to ascertain the principles, by which it can be maintained. A joint judgment upon a joint contract without doubt operates at law as a merger of the joint contract; and having passed in rem judicatam no joint suit can afterwards be maintained upon the contract, but only upon the judgment. That has been the well-established law at least ever since Higgens's Case, 6 Coke, 44–46; on the ground, that a judgment, being matter of record, is of a higher nature than a mere specialty; and the law will not in point of policy allow a plaintiff to multiply suits for the same cause of action against the defendant, to his oppression and injury. See Com. Dig. "Action," K, 3, K, 4; Lechmere v. Fletcher, 1 Cromp. & M. 632, 633. If one of the judgment debtors dies, the judgment survives against the others; and no remedy at law lies upon it against the executor or administrator of the deceased debtor. If, however. the original debt was in reality the joint debt of all the parties, as partners, or as otherwise having a joint interest, and the survivors are insolvent; in such a case a court of equity will enforce the judgment, as it would have enforced the original contract, against the assets of the deceased debtor. upon the ground, that it ought, under such circumstances, to be treated as a several, as well as a joint contract. In the present case the contract is several, as well as joint; and it becomes necessary to consider, whether the joint judgment could even at law operate as a bar to a several suit brought against Abbott in his lifetime or against his legal representatives after his decease upon the several obligation created by the bond. Treated as a matter of principle it would be difficult to affirm. that a joint judgment ought to be held any bar except to the joint contract, on which it was founded. In a

several suit bought rightfully on the bond as a several contract, the bar of a former joint judgment would not seem to apply; for in a legal sense the former judgment was not between the same parties. nor upon the same contract. It would be strictly res inter alios acta. In Higgens's Case, 6 Coke. 44–46. it was held by the court. that where two are bound jointly and severally and the obligee has. judgment against one of them. he may yet sue the other: for against him the nature of the bond is not changed: for notwithstanding the judgment he may plead. that it is not his deed. See Broome v. Wooton. Yel. 67, and Mr. Metcalf's note; s. c., Cro. Jac. 73. 74; s. p. stated in 1 Cromp. & M. 634, 635. That case is not directly in point to the present; for. here. the original judgment was joint; and therefore. quoad the bond. as a joint contract. it had as to both passed in rem judicatam. In Dyke v. Mercer, 2 Show. 393, two men were bound in a bond to J. S. (it is not said jointly and severally); one was sued. who pleaded, that his co-obligor had been sued to judgment and thereupon a fieri facias issued. and the sheriff levied the money. Upon demurrer it was held, that the plea was bad. it not averring. any satisfaction. Here, again. the party sued was not a party to the former judgment. In Sheehy v. Mandeville. 6 Cranch [10 U. S.] 253, 265, it was held by the supreme court of the United States that a recovery in a several suit against one partner upon a partnership contract (a note) was no bar to a joint suit against both partners on the same contract, at least as to the partner. not before sued, and who set it up as a separate defence; for as to him the former judgment was no merger of the contract, he not being a party to that judgment. On that occasion the court said: "The doctrine of merger, even admitting, that a judgment against one of several joint obligors would terminate the whole obligation, so that a distinct action could not be maintained against the others. which is not admitted. can be applied only to a case, in which the original declaration was on a joint covenant. not to a case. in which the declaration on the first suit was on a sole contract." This case also is distinguishable from the case at bar, because the defendant was not a party to the original judgment. But the remark of the court. that a judgment on a sole contract cannot be a bar to a suit on a joint contract seems to apply in principle here; for it must be equally true as to the converse case of a judgment on a joint contract, as a bar to a subsequent suit on a sole contract. They are not. and cannot be treated as the same identical cause of action between the same parties. The case of Ward v. Johnson, 13 Mass. 148. is also distinguishable. The original suit was brought against one partner upon a partnership contract; and afterwards a joint suit against both partners, in which each partner pleaded the

former judgment in bar. The court held, that the former judgment was a good bar as to the partner, who was formerly sued; and that, therefore, the joint suit was not maintainable against either partner. since there was no principle of law, which could authorize separate judgments in an action on a joint contract. The court criticised the case of Sheehy v. Mandeville: but did not deem it applicable to the case before them. But the learned judge. who delivered the opinion of the court, said: "It is true, that in case of a joint and several contract an unsatisfied judgment against one of the promisors is no bar to a subsequent action against the other." The subject has been very recently discussed in England in Lechmere v. Fletcher. 1 Cromp. & M. 623; but there, again. the facts did not call for any decision of the precise point now before this. court. In that case there was an original partnership debt. upon which a joint suit was brought; and in that suit (irregularly enough. as was admitted) one of the defendants had a verdict in his favor and the other a verdict and judgment against him. Afterwards the plaintiff brought a sole suit against the defendant. who had the verdict in his favor. upon a distinct promise made to him before the former suit was brought to pay his (the defendant's) proportion of the debt. One question was. whether the former judgment in his favor was a bar to the new suit; and the court of exchequer held. that it was not; for it was not for the same cause of action. or to be disposed of by the same evidence. On that occasion. however, Mr. Baron Bayley, in delivering the opinion of the court, went largely into the authorities, and especially commented on the Case of Higgens, 6 Coke. 45, and Broome v. Wooton. Cro. Jac. 73, Yel. 68. After quoting the language of Lord Chief Justice Popham in the latter case. that in debt on an obligation against two. "every of them is chargeable and liable to the entire debt: and therefore a recovery against one is no bar as to the other until satisfaction," he added: "If, indeed. that were the case of a joint bond, not a joint and several bond, we have been referred to no authority, which goes that length. It may be. where you sue and recover a judgment against one debtor only, on a contract which is joint. and not several, that your right to sue on the joint contract is destroyed. That, if so. would be so merely on the ground of the difficulty, to which the form of action would give rise. If on a joint contract you have sued one, and entered judgment against him, there might be an invincible obstacle; because upon a new action against another of the parties to the contract. the defendant would have a right to plead. that he made no promise. except with the other defendant. and he could not be joined. Therefore, though we have met with no case. which establishes the position. we are inclined to think. that, in the case

of a joint bond, a judgment against one joint contractor would be a bar to an action against another. But if a defendant is liable separately, as well as jointly, the technical difficulty, to which I have referred, is removed." He afterwards added: "Where there is a joint obligation, and a separate one also, you do not, by recovering judgment against one, preclude yourself from suing the other." Now, this reasoning though not ad idem, yet certainly in its general scope goes far to establish the conclusion, that a separate suit would be maintainable at law against Abbott's administrator, on the separate obligation of Abbott; and that the judgment on the joint action would be no bar, because in such separate suit it would not be necessary to make the other obligors parties. And upon principle, if there' were no authority, it appears to me, that the same conclusion must be drawn. When a party enters into a joint and several obligation, he in effect agrees, that he will be liable to a joint action, and to a several action for the debt; and if so, then a joint judgment can be no bar to a several suit, if that judgment remains unsatisfied. The defect of the opposing argument is, that, it supposes, that the obligee has an election only of the one remedy, or of the other; and that by electing a joint suit, he waives his right to maintain a several suit. That I take not to be a sound legal interpretation of the contract. The remedies are concurrent. And I know of no principle of law, which would have prevented the plaintiffs from bringing a joint suit and a several suit on the bond at the same time, and proceeding therein pari passu. It is true, that they could have but one satisfaction. But we all know, that on the same contract the plaintiff may often maintain different suits at the same time, though he can have but one satisfaction. A joint judgment is not per se a satisfaction of a joint and several contract.

I have thought it proper to say thus much upon the general question at law. But in my judgment, it is wholly immaterial in this case, whether a suit could be maintained at law, or not. The joint contracts of debtors, having a common interest, are in equity treated as joint and several, wherever the joint remedy at law fails to enable the plaintiff to obtain satisfaction. Thus, if a joint debt of partners exists, and one of them dies, and the other is insolvent, a court of equity will compel payment out of the assets of the deceased partner. In such a case, a court of equity raises, by implication the several liability. A fortiori, the same principle will be applied by a court of equity in the case of a contract, in form joint and several, where the survivors are insolvent. If the joint judgment could be treated at law (as I think it cannot be,) as a merger of the several obligation; so far from that constituting a ground in equity to refuse relief

against the assets of the deceased party, it furnishes a clear ground for its interference; for it is against conscience, that a party, who has severally agreed to pay the whole debt, should, by the mere accident of his own death, deprive the creditor of all remedy against his assets. So courts of equity have always treated this matter; and the present case is but a new application of a very old and well-established doctrine. I do not go over the authorities. The principle to be deduced from them, and the authorities, by which it is supported, are sufficiently stated in the work cited at the argument. 1 Story, Eq. Jur. § 676, and note 1; Id. § 164, and note. Sir Wm. Grant, in Devaynes v. Noble (Sleech's Case) 1 Mer. 564, 565, and in Sumner v. Powell, 2 Mer. 30, 36, has given a very clear exposition of the doctrine, and of the grounds of equitable interference. It is applied to all cases, where the contract is in fact, or ought in contemplation of law to be held, joint and several; and then it is immaterial, whether all are principals, or a part are sureties. Rawstone v. Parr, 3 Russ. 424, 539, fully recognizes this doctrine, though the case was finally disposed of upon another ground, viz. that there was no sufficient proof, that a joint and general contract was intended by the parties.

Upon the whole, my opinion is, that the United States are entitled to a decree for the amount of the debt now due to the bond, after deducting therefrom, the amount of the debenture certificates, with interest upon the balance, to be paid out of the assets of Abbott now in the hands of the defendant, in virtue of their general right of priority of payment in a case of insolvency.