ESTATE OF SOLOMON HEYDENFELDT, DECEASED.
[No. 10,137; decided October 4, 1895.]

Will.—The Phrase "All My Debts," used in a direction by the testator to his executors to pay "all debts which I may owe at my decease, from the proceeds of sale of my unproductive property," is held to include a debt secured by mortgage.

Application to compel payment of mortgage debt out of estate.

T. M. Osmont, for the applicants.

Geo. A. Knight and Chas. J. Heggerty, for the executors.

COFFEY, J. The deed from Solomon Heydenfeldt, deceased, to Thomas O. Heydenfeldt and Mrs. Hellings is dated October, 1887, and was delivered to Charles Ashton, for the petitioners. It is a grant, bargain and sale deed, the language being that the grantor does "bargain, grant, sell and convey unto the said parties of the second part, their heirs, executors, administrators and assigns forever," the property in controversy.

The deed also contains the following covenant: "And I do, for myself, my heirs, executors and administrators, covenant and agree to and with the said parties of the second part, their heirs, executors, administrators and assigns, to warrant and defend the sale of said property hereby made unto said parties of the second part, their heirs, administrators and assigns, against all and every person and persons whomsoever lawfully claiming or to claim the same."

Subsequently the decedent executed his promissory note, secured by mortgage on the premises in controversy, to the German Savings and Loan Society, for the sum of $40,000. The same is still unpaid. The mortgagee has presented the claim to the executors, and it has been allowed. This application is for an order directing the executors to pay the same.

After the making of the deed, to wit, in October, 1889, decedent made his will.

The premises conveyed to Thomas O. Heydenfeldt and Mrs. Hellings were then and are now of the value of $45,000 or $50,000.

The answer admits that the property conveyed to Sunshine, Elfin and Moody was and is of the value of $38,000 cash, and the property conveyed to Thor and Oxen of the value of $29,000 and $30,000 respectively.

If the mortgage is to be saddled upon the property of Thomas and Mrs. Hellings, nothing will be left for them, or nothing of any consequence. The testator obviously intended to equalize his children, or nearly so, and to compel the grantees of the property in question to pay the mortgage would be to deprive them of the benefaction intended.

By the terms of the will it is provided:

"Item 1. I direct my executors to pay all debts which I may owe at my decease, from proceeds of sale of my unproductive property."

The petition alleges that the executors have now in their hands over $40,000, proceeds of sale of unproductive property. This allegation is not denied by the answer.

The testator says all his debts. And he further specifies the fund out of which these debts are to be paid.

The code provides that language shall be given its natural meaning. "Words and phrases are to be construed according to the context and the approved usage of the language": Civ. Code, 13.

"The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained": Civ. Code, 1324.

The phrase "all my debts" means all debts and obligations of every kind whatsoever. If the testator intended to use the language in a more restricted sense, the party who claims that such was his intention must make it clearly appear from other expressions used in the will: Maxwell v. Maxwell, L. R. 4 H. L. 506; Estate of Woodworth, 31 Cal. 615.

In the latter case the following propositions are distinctly enunciated and decided:

1. Word "debts" includes mortgage debts.

2. Mortgagor personally liable for mortgage debt when the debt secured is his debt (as in this instance).

3. The devisee of mortgaged land entitled to have mortgage discharged from assets of estate, where devisor is per-sonally liable for the debt.

4. Testator presumed to know the law, and to have made his will in view of the consequences of it.

In all the following cases the phrase "pay all my debts" was held to include mortgage debts, notwithstanding the statute provided that the devisee should take the property cum onere, unless a contrary intention could be gathered from the will: Stone v. Parker, 1 Drew. & S. 212; Smith v. Smith, 3 Giff. 263; Mellish v. Vallins, 2 Johns. Ch. 194, 10 Jur., N. S., 864; Eno v. Tatum, 4 Giff. 181; Eno v. Tattum (on appeal), 3 De Gex, J. & S. 443; Moore v. Moore, 1 De Gex, J. & S. 603; Rodhouse v. Mold, 35 L. J. Ch. 67; Perry v. Maxwell, 2 Dev. Eq. 488, 496.

It matters not that the mortgagee has only a particular remedy for the enforcement of his demand, or that he has no remedy at all. The question is not what remedy the creditor has, but *what was the meaning of the testator:* Bradley v. Andrews, 137 Mass. 59.

"The testator is supposed to mean all his subsisting legal debts": Berg v. Radcliff, 6 Johns. Ch. 310; City of Baltimore v. Gill, 31 Md. 375 (see pages 389, 390).

"The debt is the principal thing; the mortgage merely the incident": Civ. Code, 2909.

It is only the "rest and residue" of the estate that is given to Mrs. Heydenfeldt, and that means the residue after payment of all the debts.

The testator was liable upon both his expressed and implied warranty in his deed to petitioners. It is manifest, therefore, that knowing his responsibility when he directed in his will that his executors pay *all his debts that he owed at his decease,* he meant to include the mortgage debt in question. This is obvious from the further fact that all his debts together amounted to only some $42,000. As the mortgage was nearly the whole of his indebtedness, he undoubtedly meant

that his executors should pay this particular debt out of the proceeds of his unproductive property.

It was not necessary for the petitioners to present their claim to the executor. The mortgagee presented his claim, and it was allowed by the executors and the judge, and is now filed among the papers of the estate. Besides, the section of the code (Civ. Code, 1500), which provides that no action shall be maintained unless the claim is presented, does not apply to this case. That section applies only to actions, by its very terms. This is not an action, but a special proceeding: See Code Civ. Proc., 22, 23.

Not only are the children of Mrs. E. A. Heydenfeldt provided for very largely, as already stated, but Mrs. Heydenfeldt herself, it appears, has received from the deceased property devised by will amounting to $104,013.29, exclusive of the debts $2,986.71. She has also, as appears by the evidence, received from him at other times property of the value of $80,000. She has also the reversion in Solomon Heydenfeldt's property, two lots at North Beach, of the value of forty thousand dollars ($40,000). The property derived under the will of the deceased will go to her children, as provided in the will, unless otherwise disposed of by her. That is the personalty; the remainder after her life estate in the realty goes to her children at all events.

To charge this mortgage upon the premises in controversy would work gross injustice, and defeat the scheme of equality provided by the testator.

An order was entered on September 12, 1895, in accordance with the principles, authorities and conclusions of the foregoing memorandum.