HANNAH L. OLMSTED, GUARDIAN AND OTHERS *vs.* JULIA M. OLMSTED, EXECUTRIX.*

As a general rule the estate of a deceased obligor in a joint bond cannot be reached at law or in equity. But to this rule there are exceptions founded on the relation of the parties to the subject matter and to each other, or an agreement or intention that the bond shall be several as well as joint.

Sureties like all other contractors are bound by their contracts; and where such contracts are absolute, their obligations are absolute, where their contracts are contingent, or subject to contingencies, they are so far favored in law and equity, that they will be presumed to have contracted with a view to whatever benefit or relief the contingent terms or law of the contract, or the happening of any contingent event, may give them, unless the contrary is clearly made to appear. But where the contract does not express the agreement or intention of the parties, to the injury of the obligee, and that is clearly made to appear, equity will reform the instrument as well against sureties as principals.

On the appointment of a guardian by the court of probate, a bond was taken payable to the judge of probate and his successors in office, conditioned that the guardian should faithfully discharge the duties of guardian according to law, and render a true account of his guardianship to the judge of probate, or to the wards when arrived at full age, which bond was executed jointly by the guardian as principal, and the father of the guardian and grandfather of the wards as surety. The guardian wasted the estate of the wards, and died insolvent, having failed to account either to the judge of probate or to the wards, and his executrix, having been appointed his successor in such guardianship, presented as such guardian a claim against his estate for breach of the

---

* This and the following case were argued at the February Term, 1871, but were not decided in season to be inserted in their place.

condition of the bond, which claim was allowed and a dividend paid thereon, and also eight years after the death of the surety, but within twelve months after the settlement of her administration account as executrix of the principal, presented to the executrix a like claim against the estate of the surety. In a bill in equity by the guardian and wards against the executrix of the surety, it was held,

1. That it must be presumed that it was the intention of both the principal, the surety, and the judge of probate, that the bond should be obligatory on the estates of the obligors, and therefore joint and several, and should be treated accordingly.

2. That the import of the condition of the bond was a covenant that if the guardian did not preserve the estate of the minors, and having appropriated as much as might be necessary for their benefit, account therefor and pay over the balance to the court of probate during their minority, they should have such account and payment on arriving at full age, and a right of action on the bond to enforce it; and that no statute of limitations could run upon such a covenant, or prevent the accruing of such a right of action, nor could any laches of the successor guardian or judge of probate affect or impair it.

3. That the petitioners were entitled to a decree for the amount of the penalty of the bond, with interest from the date of the presentation of the claim against the estate of the surety.

Whether the successor guardian had such a right of action on the bond against the surety, as required her to present it against his estate, in order to save the rights of the wards, or avoid a liability over to them if she did not; and if she had such right of action, whether it accrued until a culpable loss by the principal, and the extent of it, were judicially ascertained by the commissioners on his estate and the court of probate, quœre.

BILL IN EQUITY by a guardian and her wards against the respondent, as executrix of Denison Olmsted, to compel her to pay damages for the breach of a bond executed by Denison Olmsted, as surety for Lucius D. Olmsted, then guardian of the present wards of the petitioner; brought to the Superior Court in New Haven county. A demurrer to the bill was filed, which having been overruled, the respondent filed an answer, on which issue was joined, and the court thereupon found the following facts:

On the 28th of December, 1858, the court of probate for the district of New Haven, appointed Lucius D. Olmsted, then of Chicago, guardian to Francis H. Olmsted, Jessie S. Olmsted and Eliza T. Olmsted, who then were, and still are, infants, and who then were owners of a large amount of estate within said district; and, in appointing him such guardian, the court took the following bond: " Know all men by these presents, that we, Lucius D. Olmsted of Chicago, Illinois, as principal, and Denison

Olmsted of New Haven, Connecticut, as surety, are holden and stand firmly bound and obliged unto Luzon B. Morris, Esq., judge of the court of probate for the district of New Haven, in the penal sum of twenty thousand dollars, to be paid to the said judge, or to his certain attorney or successors in said office. To the which payment, well and truly to be made and done, we the said obligors do bind ourselves, and our heirs, executors and administrators, and each and every of them, for and in the whole sum aforesaid, firmly by these presents.

Signed with our hands and sealed with our seals, this 28th day of December, A. D. 1858.

The condition of this obligation is such, that if the above bounden Lucius D. Olmsted, now chosen and appointed guardian to Francis H., Jessie S., and Eliza T. Olmsted, minors, about six, four and two years of age, residing in Chicago, Illinois, but having property in this district, shall well, truly and faithfully execute and discharge the aforesaid office of guardian o the said minors, in parts thereof, according to the rules, tand directions of the law in such case made and provided and render a true account of his guardianship to the said judge, if thereunto required, or the wards when arrived to full age ; then this obligation to be void, and of none effect; otherwise to remain in full force, power and virtue."

· LUCIUS D. OLMSTED,   [SEAL.]

DENISON OLMSTED,   [SEAL.]

Immediately upon his appointment, Lucius, in his capacity as such guardian, received and took into his possession, and from time to time thereafter while he was such guardian, received and took into his possession in his capacity as guardian, funds and moneys belonging to his wards to a large amount, which funds, to the amount of twenty-nine thousand nine hundred and seventy-four dollars and fifty cents, he was chargeable for in his guardian accounts at the time of his death. During Lucius' life-time, on the 13th of May, 1859, Denison Olmsted died, and the respondent was duly approved as executrix, and Lucius was duly approved as executor, of his last will. On the 25th of May, 1859, an order was passed limiting six months

for the exhibition of claims against the estate, of which due notice was given. On the 13th of March, 1862, Lucius died; whereupon the respondent became and has ever since been sole executrix of said Denison.

After the death of Lucius, on the 21st of August, 1862, the petitioner, Hannah L. Olmsted, was by said court of probate duly appointed guardian of said infants, and she was afterwards, on the 16th of March, 1863, duly approved and confirmed by said court, and qualified as executrix of Lucius—he having left property at his death to be administered upon in said district. She thereupon represented the estate of Lucius to be insolvent; commissioners were duly appointed, and six months from the 23d of March, 1863, were limited for the presenta tion of claims.

On the 15th day of September, 1863, the petitioner, as Lucius' executrix, returned an inventory of the estate, showing real estate appraised at $1,500, and personal estate appraised at $50, which was accepted and approved by the court. On the 12th of January, 1867, the commissioners made their return, showing claims allowed by them to the amount of $44,981.02; which return was on the same day accepted by the court. All of the claims were presented to the commissioners within the time limited, and were all due and owing from Lucius at the time of his decease. On the 15th of June, 1867, the petitioner presented to the court her account as Lucius' executrix, showing a balance in her hands after payment of debts of $4,817.46, and she was thereupon ordered by the court to pay the claims allowed by the commissioners at the rate of 10.71 per cent.

Among the claims which had been presented to the commissioners within the time limited, was the claim of the petitioner as guardian of said infants, which she had presented in their behalf, and which, being justly due, the commissioners had allowed in their return, as accepted by the court, to the amount of $21,042.83 principal, and $8,931.67 interest, amounting in the whole to $29,974.50.

Immediately after the passage of the order of the 15th of June, 1867, above recited, the petitioner, pursuant to the

requirements of the order, set apart and paid over to and charged herself, in her capacity of guardian, three thousand, two hundred and ten dollars and twenty-seven cents, being a dividend of 10.71 per cent. on the claim of the infants ; and she also immediately paid a like dividend upon each of the other claims allowed against the estate of Lucius ; all which payments were made by her before the 17th of June, 1867, and exhausted the whole of the estate. On the 17th of June, 1867, the petitioner, having made due return of her doings as executrix, was discharged by the court from all other duties as executrix.

While administering in Connecticut upon the estate of Lucius, the petitioner was also, under the jurisdiction and control of the proper probate court in Illinois, administering as his executrix upon certain estate left by him in Chicago at the time of his death, and she was also, as guardian of the infants, endeavoring to secure from the estate in Illinois payment, in whole or in part, of the balance due from him to them. The final settlement of the administration in Illinois was made in December, 1870. The petitioner, as guardian, has received from the estate in Illinois only $4,423.59. The estate of Lucius in Illinois was settled as an insolvent estate, and was in fact insolvent; and nothing more can be got from it, or from his estate any where, to apply toward payment of the claim of the infants.

On the 20th of November, 1867, the petitioner presented to the respondent the following demand, in writing :

" To Mrs. Julia M. Olmsted, executrix on the estate of the late Denison Olmsted :

In discharge of my duty as guardian of the minor children of the late Lucius D. Olmsted, (namely, Francis H. Olmsted, Jessie H. Olmsted, and Eliza T. Olmsted), and in behalf of said minors and of each of them, I hereby present to you, as a claim against said estate, this demand for payment of the amount due from said estate upon a certain bond, given by said Lucius D. Olmsted and said Denison Olmsted to the judge of probate for the district of New Haven, to secure the performance by said Lucius D. Olmsted of his duties as

guardian of said children, to wit, a bond in the penal sum of twenty thousand dollars, dated December 28th, 1858.

The condition of said bond having been broken, I hereby claim, as guardian, &c., and in behalf of said children and each of them, from said estate and from you as executrix thereon, payment of the amount due by reason of the breach of the condition aforesaid, to wit: thirty thousand dollars. Dated this 20th day of November, 1867.

HANNAH L. OLMSTED,

*Guardian, &c.*"

The respondent refused to comply in any respect with this demand, and has ever since adhered to her refusal.

No other demand on the bond has ever been made on the estate of Denison Olmsted. The estate of Denison Olmsted has thus far been administered as a solvent estate, and is in fact solvent, and at the time of the presentation of the claim by the petitioner to the respondent there was, and ever since has been, remaining in the hands of the respondent as executrix, after the payment of all debts exhibited against the estate within the time limited, a large amount of money, more than enough to pay in full the claim of the petitioners. The estate is not yet finally settled.

All the questions of law arising upon the foregoing facts, and upon the whole record, were reserved for the advice of this court.

*H. B. Harrison,* for the petitioners.

*J. S. Beach,* for the respondent.

1. The bond is a joint obligation. *Carter* v. *Carter,* 2 Day, 442; *Olmstead* v. *Bailey,* 35 Conn., 584; 2 Swift Dig., 184. The death of a joint obligor discharges his estate, and casts the burden on the survivors. 1 Parsons Cont., 30; Gould Pl., 191. It is a general rule that if the right of the creditor against the estate of the decedent is discharged at law, it must be deemed discharged in equity. A mere change in the form of the remedy from a court of law to a court

of equity confers no new rights, and imposes no new liabilities. To this rule an exception exists in favor of a creditor upon a joint contract, in a case where all the joint contractors are principals, each having been equally benefited by the consideration for which the obligation was given, and each under a moral obligation to pay the debt. In such case a court of equity assumes that there has been a mistake in the drafting of the instrument—that it was intended to be, as in equity it ought to have been, a joint and several obligation, and in the exercise of its admitted jurisdiction over such matters, the court will reform the contract, and grant relief against the representatives of the deceased obligor. 1 Story Eq. Jur., § 162. But the exception cannot, from its very nature, apply to or include a penal bond, in which the deceased obligor was a mere surety. The legal liability of such a joint contractor is the measure and the limit of his equitable liability. A court of equity cannot in such a case presume that the contract is different in form from that intended by the parties, and reform it for the purpose of compelling the surety to fulfil the moral obligation he is under, for no moral obligation rests upon him. *Lockwood* v. *Jones*, 7 Conn., 435; *Parsons* v. *Williams*, 9 id., 239; *Bissell* v. *Ames*, 17 id., 127; 1 Story Eq. Jur., §§ 163, 164; *U. States* v. *Cushman*, 2 Sumner, 435; *U. States* v. *Price*, 9 How., 91, 92, 94; *Fielden* v. *Lahens*, 6 Blatchf., 525.

2. If this bond was a joint and several obligation, the petitioner would have no remedy against the estate of Denison Olmsted, the deceased surety. The petition proceeds upon the concession that there is no remedy at law. A court of equity will not lend its aid to enforce a penal bond against a surety, or against his representatives. Especially will such aid be refused when the penalty is sought to be enforced for a breach of the bond that occurred long after the death of the surety. The trust fund in this case was intact at the death of the surety, and whether it was lost during the first, second, or third year of the interval between his death and that of the principal, we are ignorant.

3. If any cause of action ever accrued to the petitioner by reason of the broken condition of this bond (which we deny) it was not exhibited against Denison Olmsted's estate within twelve months thereafter. It was the duty of the executrix of the deceased guardian to hold the trust fund belonging to the wards separate and distinct from the estate of the testator, and to pay over the same to the new guardian. This duty she failed to perform, for the reason that no trust fund came into her possession. It was non-existent at the decease of the late guardian. So that the new guardian, failing to receive any portion of the trust fund, was compelled to present a claim for damages sustained by reason of such failure against the insolvent estate of the late guardian, for such dividend upon the amount of the trust fund as the insolvent estate should pay. The cause of action existed as against the principal at the time it was presented to the commissioners on his estate, and the evidence of its then existence is involved in its presentation to and allowance by the commissioners. It accrued, if at all, against the estate of the surety at the same time that it accrued against the estate of the principal. It was a joint obligation, and though the relation of principal and surety between the obligors might cause the amount which the estate of the latter should finally be compelled to pay to be contingent upon the dividend received from the estate of the principal, the liability itself was not contingent, but existed and remained fixed from and after the breach of the condition of the bond. Even if the liability of the estate of the surety was contingent upon the ascertainment of the inability of the estate of the principal to respond to the claim of the new guardian, that inability was apparent to the petitioner when in her capacity as executrix she returned an inventory of the entire assets at $1,500, and at the same time in her capacity of guardian presented a claim of $30,000.

4. If the petitioners are entitled to any decree, it must be for twenty thousand dollars, the amount stipulated in the penalty of the bond, without interest.

Under the English rule the penalty of the bond is the limit

of liability, both against principal and surety. *Hellen* v. *Ardley*, 3 Car. & Payne, 12, and cases cited in note. The more general doctrine in this country is that it may be exceeded, as against the principal, by the allowance of interest. *Carter* v. *Carter*, 4 Day, 30. And in some exceptional cases of money bonds, interest may be allowed against the surety after demand made. *Lewis* v. *Dwight*, 10 Conn., 95. But the universal rule is that upon bonds of this character, given to secure the performance of official duties, the amount named as the penalty for non-performance by the principal, is the extreme limit of the liability of the surety. *Leggett* v. *Humphrey*, 21 How., 76 ; Sedgw. on Dam., 425 ; Hurlstone on Bonds, 107. Whatever conflict of authority there may be in actions of law involving this question, it is believed that no case can be found in which a court of equity has, as against a naked surety in a bond of this description, decreed interest to be paid, when the effect of such decree would be to thereby increase the liability of the surety beyond the amount named in the penalty of the bond.

BUTLER, C. J. The facts necessary to entitle the petitioners to a decree are found in this case, and such decree is to be advised unless one or the other of the two defences urged is sufficient to bar their right.

The first objection is that the bond was a joint bond ; that the deceased Denison Olmsted was a mere surety; that at his death his estate was discharged at law, and that it cannot now be charged in equity. The bond is unquestionably joint ; and it is true, as a general rule, that the estate of a deceased obligor of such a bond cannot be reached at law or in equity. But to this rule there are exceptions, founded on the relation of the parties to the subject matter and to each other, or an agreement or intention that the bond should be several also. Thus, where the obligors are partners, and the bond was for the benefit of the partnership, or where the obligors were joint borrowers of money for which the bond was given, equity will treat the bonds as joint and several, to enable the obligee to

reach the estate of the deceased obligor.    And so it will where the instrument is not according to the agreement or intent of the parties.

It is further said that Denison Olmsted was a mere surety; that sureties are favored at law and in equity, and that this bond, even if a mistake was proved, could not, as against his estate, be reformed, or treated as joint and several in equity. But we do not so understand the law.  Sureties, like all other contractors, are bound by their contracts, and where such contracts are absolute, their obligations are absolute ; where their contracts are contingent, or subject to contingencies, they are so far favored in law and equity that they will be presumed to have contracted with a view to whatever benefit or relief the contingent terms or law of the contract, or the happening of any contingent event, may give them, unless the contrary is clearly made to appear.    But where the contract does not express the agreement or intention of the parties, to the injury of the obligee, and that is clearly made to appear, equity will reform the instrument, as well against sureties as principals. These principles are appositely and correctly expressed by Judge Story in *The United States* v. *Cushman*, 2 Sumner, 434, as follows : " The argument of the defendant is that the present is the case of a surety, and against a surety a court of equity will take no step to enlarge his liability, or to make him liable where he is already discharged at law.    Generally speaking this doctrine is true, and fully supported by the authorities. But the question is whether it applies to the present case. This is not a case where the plaintiff seeks to have a bond or other contract, joint in its form, reformed so as to make it joint and several against a surety, living or dead.    In such a case a court of equity will not interfere, unless there is the most plenary evidence to establish the fact that it was the intention of all the parties that it should be several as well as joint.    But if such an intention is clearly established, courts of equity will enforce that intention, when there has been an omission to express it by accident, or mistake, or fraud, as well against sureties as against the principal debtor.    Under such

Olmsted *v.* Olmsted.

circumstances, there is no distinction between the case of sureties and that of principals ; for it is a mere specific performance of the original contract, as understood by all the parties."

In view of these principles the question in hand is, does it clearly appear that the parties to this bond intended that it should be joint and several, and bind the estate of the deceased surety. In my judgment it is not possible to doubt that such was their intention, without adopting the other alternative, which furnishes an equally conclusive answer to the respondent's objection, viz: the alternative that they intended a fraud upon the law and the infants.

It is a benign yet arbitrary power, which every sovereignty exercises, to take care of the persons and estates of infants. In England the power is vested in the Lord Chancellor, who is said by Blackstone to exercise it " by right derived from the crown—the general and supreme guardian of all infants, as well as idiots and lunatics; that is, of all persons who have not discretion enough to manage their own concerns." In this state the authority is conferred by statute upon courts of probate, and in general the manner in which the duty shall be performed is also prescribed, and by various laws the General Assembly assumes absolute control over the estates of infants.

Prior to 1797 our statutes in relation to the appointment of guardians were very simple, and the courts were directed upon the appointment of a guardian, to take " sufficient security" for the discharge of the trust, and to oblige them to render their account to the court, or to the minor when of age. The act of 1797 provided for the first time for the appointment of a guardian to a minor who had a father living, where such minor should come into possession of an estate from any other source than the father, and authorized the appointment of the father or of a third person. In that act the words " sufficient bonds" were substituted for " sufficient security" in former acts, and have ever since been used. The legislature obviously intended that such estate should be

*secured* absolutely, or as nearly so as possible, for the benefit of minors until they should arrive at full age. Such was the sovereign will, resting on the highest principles of morality and justice, embodied in the law, and every judge of probate was bound to execute it faithfully.

It being thus the sacred duty of the legislature, and their intention, that the property of infants should be secured *adequately*, it was made the duty of the judge of probate to take " sufficient bond" with surety, to secure it ; *sufficient in terms*, as well as responsibility ; " obligating" both parties and their representatives to *preserve* the property, and to render an account of it and to pay it over, if not to the judge of probate, then to the minors when they should become of age. Such was the duty and intention of the legislature, and such the spirit and purpose of the law they enacted in performance of it.

In order that the bond to be taken by the judge of probate should be the adequate security required by the law, and bind the estate of the surety, it was legally necessary that it should be joint and several, and so they have been generally, if not universally, taken by judges of probate. The judge of probate must be presumed to have intended to do his duty in this case, and take such a bond. The obligors, in this case father and son, must be presumed to have been honest men, to have known what the law required of them and of the judge of probate, and of the high moral obligation which it imposed on all of them, and to have *intended to conform to its requirements*. Looking then to the situation of those helpless infants, to the object, purpose and letter of the law, to the fact that these parties were not executing a bond in which the *obligee* or *any other person* who was " *sui juris*" had any *personal interest*, but a bond prescribed by law to an officer of the law, for the *preservation* of the property of *infants during their minority*, and that in these respects it differs from the other cases relied upon, I think we not only may, but are bound to presume, that it was the intention of Denison Olmsted, and his son, and the judge of probate, that the bond should be obligatory on their estates, and therefore joint and

several, and that it was made joint by mistake, and treat it accordingly. We cannot do otherwise, in my judgment, without presuming that Denison Olmsted intended a fraud upon the law and his grandchildren, and that presumption would impose the same duty upon us.

The second objection of the respondent is that if there ever was a breach of the bond, by which any right of action accrued to the petitioners, it accrued after the death of Denison Olmsted, and was not presented within twelve months after it accrued against his estate, and is barred by the statute of limitations. That statute is in the following words: "When a right of action shall accrue after the death of the deceased, it shall be exhibited within twelve months after such right of action shall accrue, and shall be paid out of the estate remaining after the payment of the debts exhibited in the time limited." This claim is based on the idea that a complete right of action accrued to the petitioner Hannah L. Olmsted, as guardian, upon her appointment, and by virtue of a breach of the entire condition of the bond. This claim involves a consideration of the nature and extent of a guardian's bond, and of several other questions which have not before arisen and been settled in this state.

This bond was given to the judge of probate as an officer of the law, pursuant to law, to secure the faithful management and preservation of the property of the minors; a proper appropriation of so much of it as might be necessary for their support; and an accounting therefor for the balance to the judge of probate when required, or to the minors when of age. It was a continuing bond against the obligors and their estates, and obligatory upon both until its conditions were all fulfilled. *Wattles* v. *Hyde*, 9 Conn., 10. Such bonds, says Judge Swift, (1 Dig., 678,) "are on the footing of covenants," and there are three such covenants in this. The first is, in substance, faithfully to manage, preserve and appropriate the estate; the second, to account to the judge of probate if required; and the third, to account to the minors when of full age. There was a breach of the first covenant

by the principal. If that breach gave a " right of action" in equity against the estate of the surety, in *whose favor* and *when* did it accrue, so that the statute in question could begin to run upon it ?

The judge of the court of probate and his successors, in their official and judicial character, are the sole obligees of the bond. Is not the right of action, if one of this character is contemplated by the statute, in them alone, and in their official character ? Such would seem to be the theory of our law. Judge SWIFT says, (1 Dig., 51,) " if the guardian misbehave &c., the court on complaint may put the bond in suit." Have the infants any right of action upon it within the meaning of the statute, on which it can run ? Statutes of limitation do not run against infants, and this court went to verge of the law in *Wilmerding* v. *Russ,* when it held that it ran against their interest, because in that case their interest was *vested* by will expressly in *trustees,* who were responsible over to the minors if they did not preserve their rights. Is the judge of probate a trustee in any such sense ? This court has holden that he is not responsible over for neglect or loss, (*Phelps* v. *Sill,* 1 Day, 328,) and can laches of his affect the rights of infants ? What " right of action" had this successor guardian ? A guardian in this state may perhaps be a trustee in some special case, where a legal title to property is vested in him, but generally he has but a power and authority uncoupled with an interest. *Welles* v. *Cowles,* 4 Conn., 182. It is true he is responsible for loss occasioned by his laches in not collecting or securing the choses in action and claims of the minors, which *as property* are under *his control* and liable to be lost or barred, and in respect to which he has a right of action. But had this successor guardian such " right of action" on this bond against the surety in it as required her to present it against his estate to save the rights of wards, or avoid a liability over to them if she did not ? She certainly had no legal title or legal control. And is not the case exceptional ? Suppose, as is probably true, the court of probate directed her to present a claim against the estate of the former guardian, advising her that no action lay in equity against the

estate of Denison Olmsted, as surety, until a *culpable* loss, and the extent of it, had been judicially ascertained by the commissioners—the special tribunal provided by law—and a judicial ascertainment by the settlement of her administration account of the extent to which that loss would be made good by the assets of the estate? Would not such a direction be a justification to her, and would it not have been correct? The rule of the civil law in relation to the rights of sureties would say that it was, and although that rule has not been received into the English law as a *general* rule, it has been adopted in *special* cases where the equities were analogous to those existing in favor of the surety here. See the discussion and cases cited by Chancellor Kent in *Hayes* v. *Ward*, 4 John. Ch., 130. If such advice was correct, then no "right of action" in equity accrued against the estate of Denison Olmsted in favor of any one, until a *culpable loss*, and the *extent of it*, were judicially and conclusively ascertained by the commissioners and the court of probate. But in respect to these questions the court are not agreed, and a full discussion and decision of them is not intended. A majority of the court are of opinion that the petition should be granted for another reason.

The third covenant of this bond was intended by the General Assembly to be, and is in terms, a distinct, alternative and continuing covenant. The import of it is that if the guardian does not preserve the money of the minors, and appropriate so much as may be necessary for their benefit, and account therefor and pay over the balance to the court of probate during their minority, they shall have such account and payment when they arrive at full age, and a right of action on the bond to enforce it. No statute of limitations can run upon such a covenant, or prevent the accruing of a right of action in favor of the minors upon it, if an accounting has not been had with the court of probate. It is so "nominated in the bond," and such a covenant is essential to the rights and for the security of the minors. Nor can any laches of the successor guardian or judge of probate affect or impair it. Such being the nature of that covenant, and no account hav-

ing been rendered the court of probate, and no objection being made that the petitioners are proceeding prematurely upon it, a majority of the court are of opinion that they are entitled to a decree.

Although the actual loss exceeds the penalty of the bond, the petitioners must be limited to the amount of that penalty. But as under our system interest is recoverable at law, where money is improperly detained after demand, as damages for the detention, we think interest should be allowed on the amount of the penalty here from the time of the demand. Such is the rule in the courts of the United States. *Bank of the United States* v. *Magill*, 1 Paine, 669, cited in Baldwin's Digest, 92.

In this opinion the other judges concurred; except FOSTER and SEYMOUR, Js., who dissented.

FOSTER, J. I am unable to concur in the opinion of the court, and as the principles involved are highly important, and the claim one of very considerable magnitude, I feel called upon to state the reasons of my dissent.

The plaintiffs are minors, infants in law, fatherless children, who come before the court by their guardian, their only surviving parent. It is unnecessary to say that their cause ought to be heard, and that, involving as it seems to do all or nearly all of their earthly possessions, it ought to be most patiently and most carefully considered before they are sent empty away. The defendant is a widow, acting as the legal representative of her deceased husband, whose estate it is sought to charge, not for a debt of his own, but with a liability incurred as surety for another. The decision to be made may not take all that she has, even all her living, but must if adverse take so large a portion that before making it we should have full assurance that it is right.

Such being the character of the parties, appealing as they do on each side very strongly, and as it seems to me very equally, to the sympathies of the court, the only safe and proper rule to adopt, doubtless, is to determine the questions that arise strictly upon their merits, according to the rules

and principles, according to the law which governs a court of equity. This rule is indeed of universal application, and is always to be enforced.

Lucius D. Olmsted was appointed guardian of these plaintiffs on the 28th day of December, 1858. He gave a bond in the sum of $20,000, himself as principal, and Denison Olmsted as surety, for the faithful performance of his duties. Denison Olmsted died on the 13th of May, 1859. Lucius D. Olmsted died on the 13th of March, 1862. His estate was insolvent, and was so represented to the court of probate when his will was proved on the 16th of March, 1862. Hannah L. Olmsted was appointed guardian of these plaintiffs on the 16th of August, 1862. The sum of $29,974.50 was found due from the estate of Lucius D. Olmsted, as guardian of these children, on which sum that estate paid $10\frac{71}{100}$ cents on the dollar. Whether or not the estate of Denison Olmsted is now liable in equity on this bond, to make good this deficiency, is the question in this case.

That Lucius D. Olmsted failed altogether to discharge faithfully the duties of his trust is too palpable to be doubted. Instead of investing the funds belonging to these children in proper securities, making up a trust fund for their benefit, it seems that he mingled their property with his own; in fact converted it to his own use, and left but a small amount of means to meet this and other liabilities. How long before his death this was done does not appear, but there was very clearly a breach of the bond when he had wasted these funds, and had no means by which he could replace them. It cannot be doubted that a right of action on this bond had accrued against his estate at the time of his death, March 13, 1862, for before that time there had been a breach; instead of faithfully performing his duties he had grossly failed to do so.

Now this bond is either joint and several, or joint only. If joint and several, the estate of Denison Olmsted was liable to an action at law *eo instanti* of a breach of the bond, and that, whether the principal obligor Lucius D. Olmsted was living or dead, solvent or insolvent. 1 Chitty Pl., 37; Broom on Parties to Actions, 113. And this, because as between ob-

ligors and obligees in a bond all the obligors are principals. That the obligors as between themselves stand in a different relation is of no importance. In a joint and several bond all are principals so far as the obligees are concerned. Just so soon therefore as a right of action on this bond accrued against Lucius D. Olmsted, or against his estate, a right of action accrued against Denison Olmsted, or against his estate, and that an action at law.

When did this right of action accrue? Against the estate of Lucius D. Olmsted certainly at the time of his death, March 13, 1862, for before that time the condition of the bond had been broken. These children however remained without a guardian until August 16, 1862, when Hannah L. Olmsted was appointed. A right of action at law then accrued to her, in right of these children, against the estate of Denison Olmsted. The time limited for presenting claims against the estate of Lucius D. Olmsted expired September 23, 1863. This claim was presented against his estate, but on what day does not appear. Taking the last day of the limitation, September 23, 1863, a right of action clearly accrued on that day against the estate of Denison Olmsted, for here was a distinct breach of the bond in the neglect or refusal of the representative of the estate of Lucius D. Olmsted to transfer and pay over to the new guardian the property and funds of these children.

Now the estate of Denison Olmsted was all this time in a course of settlement in the court of probate as a solvent estate. Under our statute concerning the settlement of estates, p. 411, section 44, it is provided that if any creditor shall neglect to exhibit his claim within such time as shall be limited &c., he shall be forever debarred of his demand &c: "And when a right of action shall accrue after the death of the deceased, it shall be exhibited within twelve months after such right of action shall accrue" &c. A right of action on this bond was perfect, as has been shown, against the estate of Lucius D. Olmsted at the time of his death, March 13, 1862; for the condition of this bond had been at that time grievously broken. A right of action accrued at the same time against the estate of Denison Olmsted. A right of action again accrued on the

16th of August, 1862, when the new guardian was appointed. That guardian was entitled to the possession of the property and funds of her wards, being required by law to take all reasonable and prudent care of that property. It was impossible to obtain it from the estate of Lucius D. Olmsted, for it was wasted and gone. Again, a right of action accrued against the estate of Denison Olmsted on the day when the claim of these plaintiffs was presented to the commissioners on the estate of Lucius D. Olmsted. It does not appear on what day the claim was presented, but it must have been within six months after the 23d of March, 1863, for that was the period of limitation. Take the extreme time, the last day, September 23, 1863, and from this day, passing over the times when a right of action had previously accrued, and suppose the statute of limitations began to run from this date, of course the time for presenting the claim, twelve months, expired on the 23d of September, 1864. No claim was presented within this time. Why therefore was it not by law barred?

Three reasons are given why it was not. First, that no right of action accrued against the estate of Denison Olmsted until June 15, 17, 1867, when the dividend on the estate of Lucius D. Olmsted was declared and paid. Second, that no right of action accrued against this estate until the insolvency of Lucius D. Olmsted's estate had been duly ascertained. Third, that this statute does not apply to infants, and that they are entitled to recover although the claim was not exhibited within twelve months after it accrued; that they may bring their action at any time before the expiration of four years after they become of age. Though these reasons are given as particularly applicable regarding this as a joint bond, I consider them now while assuming the bond to be joint and several.`

That there was a breach of the condition of this bond before the death of Lucius D. Olmsted, in the manner already pointed out, I consider a proposition too plain to be argued. If not broken during the life of Lucius D. Olmsted, it was never broken by him. Who else has ever broken it? Who else could break it, and when?

That no right of action accrued against the estate of Denison Olmsted until the insolvency of Lucius D. Olmsted's estate was duly ascertained, is subject to question, to say the least, assuming this to be a joint bond; and if it be joint and several, the proposition is wholly unsustainable. If the bond be joint, the plaintiffs insist that a several liability still exists in equity; and if so, will not equity furnish immediate relief? If there be a several liability, that can be, and must be, at once enforced against the estate of Denison Olmsted, whether the estate of Lucius D. Olmsted be solvent or insolvent. In this point of view the case stands precisely on the ground of a claim against a partnership. There the obligation is joint, but it is also several; and so the estate of a deceased partner may be held to pay a partnership debt, though there are solvent surviving partners. *Camp* v. *Grant*, 21 Conn., 41, and the cases there cited. Making the liability of the estate of Denison Olmsted to depend on the contingency of the solvency of Lucius D. Olmsted's estate is a virtual abandonment of the claim of several liability. That liability must be a fixed fact, one way or the other, and cannot be contingent upon the solvency or insolvency of a coobligor.

But granting that no right of action accrued till the insolvency of Lucius D. Olmsted's estate was duly ascertained, what time must be fixed? The rule adopted by the Supreme Court of Massachusetts, in *Walker* v. *Bradley*, 3 Pick., 261, does not seem to me applicable. As the new guardian was also executrix of Lucius D. Olmsted's estate, she must have known with reasonable certainty that the estate was insolvent, long before the decree of the court established that fact. The precise amount of the claim upon the estate might be contingent upon that decree, and the amount of the dividend paid, but not the claim itself. The whole inventory of the estate of Lucius D. Olmsted was but $1,550, and as this single claim, which was only a part of his indebtedness, was nearly $30,000, there surely was no need of a decree of a court to determine the insolvency of the estate. There was it seems a small amount of property in Illinois, but not enough to raise a doubt

at any time that this estate from the first was hopelessly insolvent. I conclude therefore that if this bond be a joint bond, a right of action had so accrued, if any ever accrued against the estate of Denison Olmsted, that it should have been exhibited at the latest within one year after September 23, 1862. If the bond be joint and several, the statute presents the same, and in fact greater, obstacles to a recovery, besides the additional fact, that in that event, no matter whether the statute be a bar or not, this bill must be dismissed because there is adequate and perfect remedy at law. Archbold's Law of Nisi Prius, 252; *Enys* v. *Donnithorne*, 2 Burr., 1190.

But it is maintained finally that this statute does not apply to infants; that they are entitled to recover though the claim was not presented within twelve months from the time it accrued; and that they may bring their action at any time before the expiration of four years after they become of age.

It is true that the second section of our "act of limitations of civil actions and criminal proceedings," (Gen. Stat., 552,) after limiting the time of bringing an action on any bond or writing obligatory to seventeen years after the same shall accrue, proceeds to enact "that all persons legally incapable to bring an action on such bond or writing at the accruing of the right of action thereon, may bring the same at any time within four years after their becoming legally capable to bring such action."

Statutes of limitation originally found little favor in courts of justice. They were regarded as unjust; a protection to dishonesty; and by a kind of judicial legislation their effect was so frittered away that they might almost as well have been repealed. Different rules of construction prevail now, and statutes of limitation have the same force and authority, and are to be carried into effect as fully, as any other statutes. Now in this statute limiting the period for presenting claims against the estate of a deceased person under certain circumstances to twelve months, there is no exception whatever. By what authority can courts except any class of persons from the

operation of the law? The sound rule is that when the statute has made no exception the court can make none. The general law excepts persons legally incapable to bring an action. That law certainly is to be regarded, carried out. That is done when it is applied to its proper subject matter, all actions brought against the parties originally made liable. But when those parties are dead, and a right of action accrues against their estates, the subject assumes a different aspect. In a very large number, perhaps in a majority, of estates settled in the court of probate, minors are interested, and not unfrequently are dependent for their subsistence upon the distribution of the property. A heavy liability may be impending over the estate, as in this case, and the construction contended for might delay the settlement and final distribution of the estate for twenty-five years. I think the legislature has intended to guard against a result which might be so disastrous, and has therefore provided this period of limitation of twelve months in cases where a right of action shall accrue after the death of the deceased.

Again, our statute, page 411, § 43, authorizes courts of probate to direct executors and administrators to cite the creditors of the deceased to bring in their claims against his estate within such time as said court shall limit and appoint, not exceeding eighteen months, nor less than six months. Does not this act apply to minors? Can a minor if he have a claim against the estate of a deceased person omit altogether to present it within the period of limitation, and then within four years after coming of age, if the debt be due by specialty, or within three years if it be a simple contract debt, sue for and recover it? I apprehend he cannot, and because there is no intimation that minors are to be excepted from the operation of the statute.

*Hall* v. *Bumstead*, 20 Pick., 2, was an action of debt on a probate bond. It was brought against the heirs of Jeremiah Bumstead, who became bound as surety on the appointment of James Child as guardian to Martha S. Child, for the faithful performance of the duties of said James as guardian of said Martha. The principal and surety were both dead. By

the statute of Massachusetts all suits against executors and administrators must be commenced within four years from notice given, and not afterwards. The laws of that state further provide that when any certain demand against the estate of any person deceased arising from covenant, contract, or agreement shall commence and be in force after the said term of four years, the claimant may file the same in the probate office, and if such demand could not be claimed till after the term of four years the claimant may then have his remedy against those who inherit the estate of such deceased person, or devisees thereof, if such claim be made within one year from the time of its becoming due. The amount due on the guardian bond was finally ascertained in the court of probate on the 15th of June, 1835, and by a decree of the court on that day the defendants were required to account for and pay over the balance. They neglected and refused to do so, and this suit on the bond was commenced on the 20th of the same month. The estate which came to the hands of the defendants as heirs was ample to meet the claim, more than four years had elapsed after administration was taken on the estate before the amount of the claim on the bond had been ascertained, and the question was were the heirs liable? SHAW, C. J., who gave the opinion of the court, says, " It is not enough that a mere formal right of action accrues by an act done after the four years. If the demand might have been made, and thereupon the action would have accrued before the expiration of four years, then it might have been brought against the administrator, and will not lie against the heir. *   *   * If James Child died, or if the ward came of age in his lifetime, in either event she became entitled to have the balance in the hands of her guardian paid on demand. In the former case payment could be enforced by the appointment of a new guardian to act for her, and in the latter in her own right. *   *   * It is said that there may be successive breaches on successive demands, and that a new cause of action arises on each breach. But this cannot be so. It must be shown not merely that there was a formal demand of an account, or citation into the probate office which

was not complied with, but that there could have been no citation before the expiration of the four years. We think it would make no difference if it should appear that the ward was under the disability of infancy during the whole or part of the time that the estate was under administration. No such disability has ever been allowed as an avoidance of this statute. On the contrary the lapse of time under this statute has been regarded as an absolute bar to all claims. And we think that it is right that it should be so. If the guardian died whilst the ward was still under age a new guardian could have been appointed in the mode provided by law to look after her property in the hands of the former guardian, and to claim it of the surety if the principal made default, or proved insolvent." The declaration in this case was held insufficient on demurrer. This case seems to me quite conclusive as to the effect of the statute of limitations, and as to the time when the cause of action accrued in the case at bar. See also remarks of Hosmer, C. J., and Bristol, J., in *Griswold* v. *Butler*, 3 Conn., 231, 240.

But are these plaintiffs within the exception in the general law, even if that exception applies to this statute? These plaintiffs had a guardian who was under no disability. She could have instituted a suit at any time, either on the bond, or proceeded as she now has by bill in equity. The guardian is not the obligee in the bond, and could not have instituted the suit in her own name. The suit must have been brought in the name of the judge of probate; but his interest is nominal merely, not real, and the bond could have been put in suit at any time at the instance of this guardian. She had all the right to sue on this bond which they will have after they attain their majority. Where then was their disability? In *Wilmerding* v. *Russ*, 33 Conn., 77, HINMAN, C. J., in giving the opinion of the court, says, "The petitioners say the fact that they were minors brings them within an exception to the statute. But the residuary estate is by the will vested in trustees, who were under no legal disability, and this is a sufficient answer to this claim." The legal interest in this bond was in the judge of probate, and surely he was under no

disability.   This brings the case strictly within the principle
of *Wilmerding* v. *Russ*, but it is not the practice of judges of
probate to institute suits on probate bonds except when re-
quested by those in interest.   The guardian in this case,
though not vested with the legal interest, had the right to
sue, and it is upon that ground that the Lord Chancellor
places the case of *Wych* v. *East India Co.*, 3 P. Wms.,
309, quoted by Chief Justice HINMAN as the authority for the
principle which he laid down.   The Lord Chancellor there
says, " The administrator during the infancy of the plaintiff
had a right to sue, and though the *cestui que trust* was an
infant, yet he must be bound by the trustee's not sueing in
time."   *Crook* v. *Glenn*, 30 Md., 55.   The interest of these
plaintiffs therefore being legally vested in one who was under
no legal disability, and having had a guardian who was
under none, but who could at all times after her appoint-
ment have effectually prosecuted all their rights, both at law
and in equity, they are not within the exception in the
general statute, even if that exception applies to this twelve
months limitation.

But the bond in question is a joint bond, not joint and sev-
eral, and by the death of Denison Olmsted the right to recover
against his estate is gone at law.   The impression may have
obtained among some that, though the right of action is gone
at law, the general liability of the party is not thereby affected;
that continues as before, the form only of the remedy being
changed; instead of an action at law the proceeding must be
in equity.   Such certainly is not the case.   A party dis-
charged by law from an obligation created by law is discharged
absolutely, except in certain specified, well defined cases.   If
it be shown that a joint bond, from which the estate of a
party has been discharged at law by his death, was intended to
be several, and that it was made joint by fraud, accident, mis-
take, or ignorance, equity will relieve, make the bond what it
was intended to be, and hold the estate of the deceased obligor
liable.   In some cases a court of equity will presume from
the nature of the transaction that a joint bond was intended
to be joint and several; as where a loan of money has been

made to two or more obligors, and they by the instrument are made jointly liable. So a joint bond of partners to pay a partnership debt will be treated in equity as the several debt of each obligor. If there was an obligation of all to pay, independently of the instrument, if credit had been given to all who signed it, if they had derived profit or advantage from the subject matter, if they had participated in the consideration, though the bond be joint equity will make it several, and hold the estate of each liable to pay it. The soundness of the principle on which decisions of this character rest, a legal or moral obligation, or both, outside the instrument, is too obvious to require argument or illustration. But the case at bar differs widely from any of these. There is no claim or suggestion that this bond was intended to be several as well as joint. It was given for no debt or liability antecedently existing against Denison Olmsted; nor did any portion of the property of these minors ever come into his hands or possession. He never had any the remotest interest in their estate, and never derived from it in any way the slightest profit or advantage. He was a mere naked surety. His obligation was created by his signature to the bond; none existed before, no additional one has since been imposed. Aside from the liability growing out of his signature to this instrument, there are no legal, equitable, or moral grounds for holding the estate of Denison Olmsted liable for one moment in this suit. Now the obligation of suretyship arises solely from positive contract, and that contract is to be construed in the same manner as any other legal instrument, by having regard to the intention of the contracting parties, as it appears upon the instrument. *Animus hominis est anima scripti.* Does justice, do equity and good conscience, require that this joint bond be made several, so as to charge the estate of Denison Olmsted, when by law no liability attaches? On what principles can such a judgment be vindicated? The intent of the parties? That as evidenced by the writing, the only legitimate test of intention, leads to a different conclusion. The hardship of the case? A most dangerous element to enter into judicial opinions, and a fruitful source of very bad precedents. Besides,

the hardship of the case is, as we have seen, so nearly balanced that its consideration must be altogether discarded. I know of no principle, I find no authority, which will sanction the extending of the liability of the surety in this case so as to charge his estate in equity, when it is discharged by law. The English and American cases of a contrary character are very numerous and very strong. I refer to a few which seem to me conclusive.

In the case of *Sumner* v. *Powell*, 2 Mer., 30, decided by Sir William Grant, Master of the Rolls, the principles which govern cases of this sort are stated so simply and clearly that I quote the opinion at some length. The bill was brought by the executor of a deceased member of a firm of bankers, against the executors of another member of the same firm. The object of the bill was to hold the estate represented by the defendants liable in equity on a joint obligation ; a deed or bond of indemnity, which their testator with the other partners in the house had given the plaintiff, the executor of another partner who had died previously, to save the estate he represented harmless against all claims which might be brought against it by the creditors of the partnership. There had been a breach of the obligation. The estate represented by the plaintiff had been compelled to pay a considerable amount of the partnership debts, and the question was whether the estate of a partner who had signed the joint obligation of indemnity could be held liable in equity, the liability being discharged at law by his death. It was a part of the case that the defendant's testator, though his name appeared for a short time as a partner, was not so in fact, but only a clerk with a salary, and that he never participated in the profits of the firm. The bill was dismissed. Sir William Grant said, page 36: "The question is whether any other effect can be given to this covenant in equity than it has at law. It has never been determined that every joint covenant is in equity to be considered as the several covenant of each of the covenantors. In the late case of *Devaynes* v. *Noble* I had occasion to examine the authorities on this subject, and found no such general proposition any where laid down. When

the obligation exists only by virtue of the covenant, its extent can be measured only by the words in which it is conceived. A partnership debt has been treated in equity as the several debt of each partner, though at law it is only the joint debt of all. But there all have had a benefit from the money advanced, or the credit given, and the obligation to pay exists independently of any instrument by which the debt may have been secured. So where a joint bond has in equity been considered as several, there has been a credit previously given to the different persons who have entered into the obligation. It was not the bond that first created the liability to pay. But in this case the covenant is purely matter of arbitrary convention, growing out of no antecedent liability in all or any of the covenantors to do what they have thereby undertaken. * * * As it is only a joint covenant that is given, how can I say that it is anything more than a joint covenant that was meant to be given? It is not attempted to be shown that there was any mistake in drawing the deed, or that there was any agreement for a covenant of a different sort. There is nothing but the covenant itself by which its intended extent can be ascertained. There is no ground therefore on which a court of equity can give it any other than its legal operation and effect."

*Sheffield* v. *Lord Castleton,* 2 Vern., 393, was a bill in equity brought to charge the estate of Lord Fanshaw, whose widow and executrix Lord Castleton had married, on a bond of recognisance which Lord Fanshaw as surety had entered into jointly with his father, for the payment of £1500, the marriage portion of his sister. The estate was not bound at law, and the Lord Keeper refused to extend the liability to bind the estate in equity, and so dismissed the bill.

*Wright* v. *Russel,* 3 Wils., 530, was an action at law, debt on bond against a surety. The bond was given for the faithful performance of the duties of one William Baird as clerk of the plaintiff. The court say, page 539 : "It is truly said that the defendant, the surety, ought not to be bound beyond the scope of his engagement. * * * Courts of equity are

favorable to sureties, for where they are not strictly bound at law a court of equity will not bind them."

In *Simpson* v. *Field*, 2 Ch. Cases, 22, it was held, " that where a surety is not bound at law, he will not be made liable in equity."

But not to multiply the English authorities, and they might be greatly multiplied, I turn to the American cases, and find them very strong, explicit and positive in the same direction.

*Miller* v. *Stewart*, 9 Wheat., 680, was an action of debt on bond against a surety for the faithful performance of the duties of the office of deputy collector of direct taxes. Mr. Justice STORY, in giving the opinion of the court, says: " Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no farther. * * * And courts of equity as well as law have been in the constant habit of scanning the contracts of sureties with considerable strictness. The whole series of them [the cases] * * * proceed upon the ground that the undertaking of the surety is to receive a strict interpretation, and is not to be extended beyond the fair scope of its terms."

Mr. Justice WASHINGTON, in giving the opinion of the court in the case of *Hunt* v. *Rousmaniere's Adm.*, 1 Pet., 13, *et seq.*, lays down principles which strongly support the claims of the defendant in this case.

The case of *Harrison* v. *Field*, 2 Wash., 136, was a bill in equity, brought to charge the estate of the deceased on a joint bond given by one Claiborne and the deceased for the repayment of a loan of money. Claiborne was dead, and his estate insolvent; he alone had the money, and the deceased was the surety. The doctrine of that case is, that if a bond be made joint without fraud or mistake, equity will not charge the executor of the surety, who was discharged at law by his death in the lifetime of the principal. *Aliter*, if the lending had been to both.

By the President: "It is a maxim in equity that where equity is equal he shall prevail who has the law in his favor. Francis' Maxims in Equity, 71. A surety has equal equity with the obligee. Opinion of the court is, that the testator Minge, having been neither the borrower nor the user of the money lent to and used by Claiborne, but a surety only, ought not in equity to be farther or otherwise bound than he was bound by the contract at law," &c. The late Chief Justice TILGHMAN, in giving the opinion of the court in *Weaver* v. *Shryock*, 6 S. & R., 264, a strong case in favor of this defendant, quotes this case of *Harrison* v. *Field* with approbation. To the same effect is the case of *Executrix of Chandler* v. *Hill*, 2 Hen. & Munf. 124, per Roane, J. In the case of *Waters* v. *Riley*, 2 Har. & Gill, 305, the Court of Appeals of Maryland say: "A surety is bound only by the bond itself, and is not under a moral obligation to pay. Equity will not therefore interfere to charge him beyond his legal liability." The decisions of this court are of similar import. *Lockwood* v. *Jones*, 7 Conn., 431; *Parsons* v. *Williams*, 9 id., 236; *Bissell* v. *Ames*, 17 id., 121. In the last of these cases, CHURCH, J., in giving the opinion of the court, says, page 127: "And indeed we suppose that a court of equity will never extend the liabilities of a surety beyond their legal limits, and his rights are to stand on the defensive, until a case is proved against him at law; they are *stricti juris*."

In the case of the *United States* v. *Cushman*, 2 Sum., 426, the questions here involved were discussed by Mr. Justice STORY with his usual fullness and learning. It was a bill in equity brought to charge the estate of Abbott, deceased, who, as surety, had with others given a joint and several bond at the custom house for the payment of duties. A suit had been brought on the bond against all the obligors, and a judgment had been obtained. Abbott died before the judgment was satisfied, and the surviving obligors were insolvent. The question was whether his estate was liable in equity. It was held liable, but the judge says, page 435: "This is not a case where the plaintiff seeks to have a bond or other contract joint in its form reformed, so as to make it joint and several against a

surety. In such a case a court of equity will not interfere, unless there is the most plenary evidence to establish the fact that it was the intention of all the parties that it. should be several as well as joint. * * * The true difference between principals and sureties is, that in the case of principals courts of equity will ordinarily presume that a contract, in form joint, was intended to be joint and several, as all are equally debtors. But in the case of sureties equity will presume nothing but what the positive facts substantiate; and if the contract is in form joint, they will not presume it to have been intended to be joint and several, unless upon distinct and satisfactory proof to that effect."

In the case of *The United States* v. *Price*, 9 How., 83, the identical question decided by Mr. Justice STORY in *United States* v. *Cushman* came before the Supreme Court of the United States, on appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania. The case was very fully considered, and the court held that equity will not give a remedy against .the personal assets of a deceased surety, when the remedy at law has been lost by election of the obligee to take a joint judgment on a joint and several obligation. Justices McLEAN and WOODBURY dissented. The dissent of two judges so able and eminent may be thought to impair the force of the judgment, but when the very elaborate opinion of Mr. Justice WOODBURY is examined, it seems to strengthen, rather than weaken, the claim of this defendant. He says, pages 107–8 : " Here one ground exists which is sufficient alone, namely, a written obligation several as well as joint, though were it necessary to show a consideration also reaching the surety, enough to raise a legal and strong presumption of one is not difficult to be pointed out, as before done and explained." The main point of difference between the court and dissenting judges was as to the effect of a joint judgment upon a joint and several obligation. The court held that such a judgment was a merger of the original contract, a satisfaction and extinguishment of the bond; that by such joint judgment the parties stood in the same relation to each other, had the same and only the same rights, and

were subject to the same and only the same liabilities, as if they had originally entered into a joint obligation. The dissenting judges held that, as the joint judgment did not create the original liability to pay, equity could go back of it to see what the original liability was; and as that by the act of the party was several as well as joint, the estate of the deceased ought equitably to be held liable in severalty.

Whether the one or the other of these conflicting opinions be the correct one is immaterial for the purposes of this case. The doctrine of the dissenting judges as effectually protects the estate of Denison Olmsted from the claim now made as does the doctrine of the court. Because the original obligation was several as well as joint, they thought the defendant's estate was liable. Here the original and only obligation was joint only, not several.

I quote briefly from the opinion of the court in this case of the *United States* v. *Price,* as given by Mr. Justice GRIER: " This contract [of suretyship] is construed strictly, both at law and in equity, and the liability of the surety cannot be extended by implication beyond the terms of his contract. If he contracts jointly with his principal, it is a legal consequence, known to all the parties, that his personal estate will be discharged in case he should die before his principal. Such being the law, it may be considered as a part of the written condition of the bond. And equity will not interfere to extend the liability, as against his estate, on the ground that such discharge arises from the mere technicalities of the law." 9 How., 91.

The only remaining case to which I shall call attention is the case of *Fielden* v. *Lahens,* 6 Blatch., 524. It was a bill in equity brought to enforce the collection of the amount payable by the condition of a bond executed by Lahens and Lafarge, on the issuing in a state court of an injunction to stay the proceedings in a suit at law pending in such court. The bond was joint, not joint and several. Lafarge was only a surety, and was in no way interested in the proceedings in the state court. The bond was conditioned to pay the firm of which the plaintiffs were survivors all moneys which

might be recovered by them in such suit at law, or the collection of which might be stayed by such injunction. The plaintiffs recovered a judgment in the suit at law for $129,-429.52, and the suit in which the injunction was issued was dismissed. Lafarge died, and Lahens, who was a defendant in the suit at law, was insolvent when the judgment was recovered, and petitioned for a discharge under the bankrupt laws of the United States. Lafarge left property sufficient to pay the judgment. In giving the opinion of the court Mr. Justice NELSON said : " This case is an important one on account of the large amount involved, and the certainty that unless it shall be recovered out of the assets of the estate of Lafarge it will be lost. But in my view of it the principles that must govern it are not new or difficult. One branch of it falls directly within the doctrine of the case of the *United States* v. *Price*, 9 How., 83, and the cases there referred to. The principle is that equity will not hold a surety liable when he is discharged at law, and that in the case of a joint obligation, and of the death of the surety, as in the present case, the remedy at law is gone as it respects the legal representatives of the surety. The cases on this subject are numerous, and it would be useless to discuss them." This bill was demurred to and the demurrer was sustained.

The elementary writers sustain the principles laid down in these cases. Bac. Abr., " Obligations" (B.), (D.), 4 ; 1 Story Eq. Jur., §§ 163, 164 ; Pitman on Principal and Surety, 90, 91. This last author in a note on page 91 says : " No case has hitherto occurred, which the author has been able to discover, where equity has varied the legal effect of the instrument so as to charge the surety. In those cases where an instrument, which in its form was joint, has been made joint and several, the parties have participated in the consideration."

The conclusion to which I come in this case therefore is, that if this bond be joint and several, a right of action accrued upon it against the estate of Denison Olmsted certainly as early as September 23, 1863. As no claim was exhibited against his estate within twelve months after that time, it

was barred by our statute, and there can be no recovery. If it is not barred by statute, the bond being joint and several, there can be no relief in equity, for the remedy is adequate and perfect at law. If the bond be joint only, as I think it is, and the claim be not barred by statute, as the obligation is purely a legal one, and as no fact has been shown why the rights and liabilities of the parties should be affected or enlarged, equity ought not to interfere.

I think the demurrer should be sustained, and that the bill is insufficient.