## Board of School Inspectors et al. v. Alexander G. Tyng, Executor, et al.

### Gen. No. 4,824.

REFORMATION—*when, of bond, will be awarded.* A bond given as township treasurer will be reformed where it appears that it was the intention of all parties that such bond should be a bond as treasurer of a board of school inspectors, to which office, and to which office only, the principal had been appointed.

Bill in equity. Appeal from the Circuit Court of Peoria county; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1907. Reversed and remanded. Opinion filed August 6, 1907.

JAMES A. CAMERON and WILLIAM S. KELLOGG, for appellants.

STEVENS & HORTON, WINSLOW EVANS, PAGE & WEAD, F. H. TICHENOR, SHEEN & MILLER and JACK, IRWIN, JACK & MILES, for appellees.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Appellants, the Board of School Inspectors of the city of Peoria and the city of Peoria, filed their bill in equity against appellees, Alexander G. Tyng, executor of the last will and testament of Lucie B. Tyng, deceased, Oliver J. Bailey, Leonard F. Houghton, Richard W. Kempshall, Benjamin F. Blossom, Mathias Huffman, and Emma Lines Andrews and Helen Stowell Lines, as executrices of the last will and testament of Calvin C. Lines, deceased, to reform and correct an official bond executed by Lucie B. Tyng, of whose estate Alexander G. Tyng is now executor, and the other appellees, sureties of Lucie B. Tyng, and for an accounting of moneys paid out by said Lucie B. Tyng as treasurer of the board of school inspectors without legal orders from said board. The bill alleges that

on May 6, 1902, Lucie B. Tyng, since deceased, was by the Board of School Inspectors of the city of Peoria legally appointed treasurer of said board for the term of one year and until her successor should be elected and qualified; that about said date the said Board of School Inspectors fixed the bond to be given by said Lucie B. Tyng as treasurer of said board for said term in the penal sum of $100,000 and fixed the compensation of said Lucie B. Tyng as treasurer aforesaid for said term at the sum of $350; that said Lucie B. Tyng was desirous of accepting and qualifying for said office, and in pursuance thereof attempted to give to said Board of School Inspectors the bond required by law to be given by the treasurer of said board, and on the second of June, 1902, tendered to said Board of School Inspectors for its approval an instrument, duly acknowledged, as follows, to-wit:

"TOWNSHIP TREASURER'S BOND.

STATE OF ILLINOIS, ⎱ ss.
  Peoria County. ⎰

Know All Men by These Presents, That we, Mrs. Lucie B. Tyng, Oliver J. Bailey, Leonard F. Houghton, Richard W. Kempshall, Calvin C. Lines, Benjamin F. Blossom, Matthias Huffman and William H. Miller are held and firmly bound jointly and severally unto the Board of Trustees of Township 8, Range 8 in said county, in the penal sum of One Hundred Thousand Dollars, for the payment of which we bind ourselves, our heirs, executors or administrators, firmly by these presents.

In Witness Whereof, We have hereunto set our hands and seals, this .............. day of May A. D. 1902.

The condition of the above obligation is such, that if the above bounden Mrs. Lucie B. Tyng, (8) Township Treasurer of Township (8) Range (8) in the county aforesaid, shall faithfully discharge all the duties of said office according to the laws which now are or may hereafter be in force, and shall deliver to his

successor in office, after such successor shall have fully qualified by giving bond, as provided by law, all moneys, books, paper, securities and other property which shall come into his hands or control of such Township Treasurer, from the date of this bond up to the time that his successor shall have been duly qualified as Township Treasurer, by giving such bonds as shall be required by law, then this obligation to be void; otherwise to remain in full force and virtue.

| | |
|---|---|
| Lucie B. Tyng, | (Seal) |
| Oliver J. Bailey, | (Seal) |
| Leonard F. Houghton, | (Seal) |
| Calvin C. Lines, | (Seal) |
| Richard W. Kempshall, | (Seal) |
| Benjamin F. Blossom, | (Seal) |
| Matthias Huffman, | (Seal) |
| W. H. Miller. | (Seal) |

Approved and accepted by

. . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . .

Trustees.''

It is further alleged that the Board of School Inspectors received said instrument, and on or about the second day of June, 1902, approved said instrument as the bond of said Lucie B. Tyng, as treasurer of the said board of school inspectors of the city of Peoria, and that thereupon said Lucie B. Tyng entered upon the duties of the office of treasurer of said board of school inspectors for the term for which she had been appointed, and as such treasurer, without giving any further bond or security whatever, she was allowed to and did receive large sums of money under the control of said board of school inspectors, to-wit, $400,000; that said Lucie B. Tyng has received said sum of $350, pay for her services as such treasurer; that said sureties were stockholders in certain banks in the city of Peoria, and that it was arranged between said Lucie B. Tyng and said sureties, that if they would sign her bond so that she could qualify

as treasurer of said board, the money derived from taxes and other sources, amounting to between $300,-000 and $400,000, should be deposited in said banks in which said sureties were interested as stockholders, to be paid out by said treasurer on the order of said board; that after filing said bond she received said moneys and in pursuance of said understanding, deposited the same in said banks, and said banks paid no interest whatever to said treasurer or to said board. The bill alleges that said Lucie B. Tyng and said sureties intended to execute a good and valid bond, conditioned as required by law for the performance of the duties of Lucie B. Tyng as treasurer of said board of school inspectors for the term for which she had been appointed, and said Board of School Inspectors intended to accept and approve a good and valid bond of said Lucie B. Tyng as treasurer of said board of school inspectors of the city of Peoria, for the term for which she had been appointed, conditioned as required by law, but that through ignorance and mistake on the part of said board of school inspectors and said Lucie B. Tyng and her sureties at the time of the execution and approval of said bond, as to who should be made obligee therein, and as to the true title of the office to which said Lucie B. Tyng had been appointed, said instrument was made to the "Board of Trustees of Township 8, Range 8, in said county," when it should have been to the city of Peoria, and through ignorance and mistake she was in said instrument described as township treasurer, etc., when in fact, but for said ignorance and mistake, she would have been described as "Treasurer of the Board of School Inspectors of the City of Peoria," and her successor mentioned in said instrument would have been mentioned as treasurer of the "Board of School Inspectors" instead of "Township Treasurer." The bill set forth the bond intended by said Lucie B. Tyng and her sureties to have been given and intended to have been approved by the board of school inspectors

in accordance with the preceding allegations. It is alleged that on June 1, 1903, said Lucie B. Tyng was appointed and qualified as her own successor, as treasurer of the board of school inspectors, and that she died testate July 4, 1905, and that Alexander G. Tyng qualified as her executor; that Calvin C. Lines died testate, and that Emma Lines Andrews and Helen Stowell Lines are his executrices. It is alleged that said Lucie B. Tyng as treasurer of said board of school inspectors for the period covered by her first mentioned bond did not perform the conditions required by law, but in violation of her duties as treasurer paid out money without the order of the board and failed and neglected to turn over to her successor in office the sum of $100,000; and there are other allegations of the violation of conditions of the bond, to the damage of the complainants, and the bill prays for a reformation of the bond and an accounting.

The defendants filed a general and special demurrer to the bill, which was sustained by the court, and, appellants abiding by their bill, a decree was entered dismissing the bill for want of equity at complainants' costs. From this decree the complainants appeal. The allegations of the bill are to be taken as true for the purpose of testing the demurrer. The material allegations of the bill are that Mrs. Tyng was appointed treasurer of the board of school inspectors of the city of Peoria, without any allegation as to whether she was or was not a member of the board, and that she and her sureties were desirous that she should qualify as such treasurer, and in pursuance of such desire she attempted to give the bond required by law and tendered the bond sought to be reformed; that she and her sureties, through ignorance and mistake on her part, and on the part of her sureties, made the bond to the "Board of Trustees of Township 8, Range 8, in said County," when it should have been made to the "City of Peoria"; and that she and her sureties, by ignorance and mistake, described the office to which

she had been appointed as "Township Treasurer of Township 8, Range 8, in said County," when in fact the true title of the office was "Treasurer of the Board of School Inspectors of the City of Peoria"; that she and her sureties signed said bond for the purpose of qualifying her as treasurer of said board of school inspectors, and that by like mistake the board of school inspectors received and approved said bond, and thereby she received the moneys under the jurisdiction of the said board of school inspectors, and that under said appointment and said bond she acted as such treasurer of said board of school inspectors, and did receive the moneys from taxes and other sources for the support of the schools under the jurisdiction of said board, and that she did not faithfully perform the duties of said office, and did not, on demand, deliver over the moneys so in her hands to her successor.

Counsel for both parties have presented for our consideration the legal status of the board of school inspectors of the city of Peoria.

The legislature of 1869 passed a special act revising and reducing into one act the charter of the city of Peoria, vol. 2, Private Laws 1869, pp. 111 to 179. Chap. 13 of that act, pp. 168 to 174, creates "The Board of School Inspectors of the City of Peoria," making the public school system a corporation by that name, and providing for the election of its members, and in its various sections defining the powers and duties of said board and its officers. Sec. 5 provides that said board of school inspectors at the first regular meeting in January of each year, or as soon thereafter as may be, shall appoint a treasurer, who may or may not be a member of the board, and who shall hold his office for one year and until his successor shall be appointed and qualified. Sec. 7 defines the duties of the treasurer: "The treasurer shall receive all the moneys belonging to the school fund of the city of Peoria and other moneys under the control of said board, and shall keep a true and ac-

curate account of all moneys received and paid out by him, for what purpose and upon what and whose account, but he shall pay out no money, except upon the order of the board  *  *  *  he shall be sworn to the faithful discharge of his duties and *shall give a bond to the city of Peoria* with good and sufficient securities to be approved by the board of school inspectors in such sum as said board shall determine *  *  *  conditioned for the faithful performance of his duties as such treasurer  *  *  *  for any breach of the conditions of said bond a suit shall be prosecuted for such breach or breaches against the treasurer and his securities in the *name of the city of Peoria* under the direction and supervision of said board of inspectors; and when any money shall be collected thereon it shall be paid over as the board shall direct *  *  *  but if the default was for the non-payment or on account of the principal of the township school fund, it shall again become a part of the principal of said fund.''

Section 8 gives the board of inspectors certain powers regarding schools, real estate, school management, etc., concluding with the tenth: ''and generally to have and possess all the rights, powers and authority necessary for the proper management of the schools and the fund belonging to the city for school purposes.''

Section 16 provides: ''The office of trustees of schools of township 8 north, range 8 east, in Peoria county, is hereby abolished, and the board of school inspectors of the city of Peoria shall succeed to all rights, powers and duties of said trustees; and the title to all real, personal, and mixed property, heretofore vested in said trustees shall vest in said board of school inspectors,'' etc.

Section 19 provides: ''Any act of the general assembly now in force shall not be construed to repeal, alter or change any of the provision of this act.''

Section 20 provides: ''All property  *  *  *  be-

longing to or vested in the trustees of schools of township 8 north, range 8 east, and the board of school inspectors of the city of Peoria heretofore established by law, and all rights and claims legal and equitable existing in them, are hereby vested in the board of school inspectors created by this act.''

Section 21 repeals an act concerning schools in township 8, range 8, approved March 6, 1867.

Section 26 of chap. 24 provides: ''This act shall be taken as a public act.''

It is insisted in behalf of appellees that the permanent public school fund, ''the township trust fund'' belonging to the territory within the jurisdiction of the board of school inspectors of the city of Peoria, is still in the control of the treasurer of township 8, range 8, in Peoria county, and that Mrs. Tyng held two offices, viz.: that she was ''township treasurer of township 8, range 8,'' and that as such township treasurer she gave a bond under the general common school act for her custody of the township trust fund, and that she was also ''treasurer of the board of school inspectors,'' by virtue of which she would receive the common school fund, which might be lawfully expended for school purposes, and for which she did not give a bond. The public school law, governing township trustees and township treasurer, is substantially the same at present as it was under the law of 1857, as appears from an examination of (1) secs. 32 and 40 of chap. 98 of Gross' Statutes; (2) statute of 1857, p. 440, sec. 32; (3) secs. 51 and 99 of the present school law. Under the general law the township treasurer is elected by the school trustees, but may not be one of the trustees, and is the custodian of all school funds, both the permanent fund and that for current expenses. By section 16 of the Peoria special school act, ''The office of trustees of schools of township 8 north, range 8 east, is abolished, and the board of school inspectors succeeds to all the rights, powers and duties of said trustees.'' Section 20 vests all the property formerly

vested in the trustees in the board of school inspectors. Sec. 7 provides that the treasurer shall receive all moneys belonging to the school fund of the city of Peoria and other moneys under the control of said board. The latter part of sec. 7 provides that when the treasurer of the board of school inspectors makes default, and the money has been collected on his bond, it shall be paid over as the board shall direct, to be used as other money in the treasury, but if the default was on account of the principal of the township school fund, it shall again become a part of said fund. The only conclusion we can draw from this phraseology is that moneys belonging both to the permanent school fund and to the current expense fund are collected from the same bond, and that the treasurer of the board of school inspectors is the custodian of all moneys in charge of the school board and gives but one bond as security for its care. The bill alleges that the principal and the sureties intended to give a bond in the sum of $100,000, in order that the principal might deposit the money in the banks in which the sureties were interested, that the banks might have the use, without the payment of interest, of the moneys on hand, and that the principal might get the salary of the office. The purpose of the makers of the bond was to give the bond that the law required, a bond of the treasurer of the board of school inspectors, to the city of Peoria. By mistake it was given to secure a bond of an officer, that of the township treasurer of the board of trustees of township 8, range 8, both of which offices had been abolished, and in lieu thereof a new office and different obligee had been created. The statute had created the office of treasurer of the board of school inspectors, the office that she was appointed to fill, and had made the city of Peoria the new obligee. The parties, either by mistake, made the bond of an officer to an obligee, neither of whom had any existence, or if it was not done by mistake, then the bond was a fraud and was offered with the

purpose of securing the management of trust money on
the fraudulent representation that a bond had been
given when the instrument executed was not what was
intended to be received.

The city charter of the city of Peoria required that
the bond should be made to the city of Peoria as
obligee. The proper obligee had no active duty to
perform and no voice in taking or approving the bond.
In County of Bay v. Brock, 44 Mich. 45, a recovery
was sustained at law on a sheriff's bond given to the
county which the statute required to be given to the
people of the state, on the ground that the public,
having relied on the bond approved by the supervisors,
and it having been given and intended as an official
bond, an error in form should not nullify the attempt
of the parties to bind themselves.

The allegations are that the bond was intended by
all the parties to it to be the bond of Mrs. Tyng for
the office of treasurer of the board of school inspectors
to which she had been appointed. If these allegations
be true, then it is one of the well-recognized principles
of equity that it will grant the reformation of such a
mistake. Courts of equity will reform instruments
against sureties as well as principals. Henkleman v.
Peterson, 154 Ill. 419; Edwards v. Schoeneman, 104
Ill. 278; Kyner v. Ball, 182 Ill. 171; Brooks v. Brooks,
12 Gil. & Johns. (Md.) 306; 1 Story's Eq. Jur. 162.
The principal in the bond had been appointed treasurer of the board of school inspectors. She was not
appointed treasurer of township 8, range 8, because
there was no such office, so that the mistake was a mistake of fact and of law and was a material mistake.
She could not qualify for the office without giving
the bond required by law, and unless a bond had been
given by her as treasurer of the board of school inspectors, she would not have been made custodian of
the moneys. It was not necessary to negative in the
bill the existence of an office which the statute had
abolished. Courts will take judicial notice of the pro-

visions of a special charter of a village in this state when such charter is declared to be a public act. Gormley v. Day, 114 Ill. 185; P., D. & E. R. R. Co. v. People et al., 116 Ill. 401.

The conduct of all the parties was the same as though the proper bond had been given. The allegations of the bill state a good cause for equitable relief. II Beach Mod. Eq. Jur., 540; II Pomeroy's Eq. Jur., sec. 845; Dinwiddie v. Self, 145 Ill. 290; Henkleman v. Peterson, 154 Ill. 419; Sparta School Tp. v. Mendell, 138 Ind. 88; Olmsted v. Olmsted, 38 Conn. 309; Percival v. McCoy, 13 Fed. R. 379.

The benefit of the Statute of Frauds is claimed by the demurrer of one of the defendants, and it is insisted that for that reason the bill cannot be maintained. It is an elementary doctrine that mistake, fraud, surprise and accident furnish exceptions to the otherwise universal doctrine that parol evidence cannot be heard to vary a written instrument. Whenever it is permitted to reform a written instrument on the ground of material mistake, the Statute of Frauds cannot be used to perpetrate a wrong in a court of equity. II Pomeroy's Eq. Jur., 2nd ed., sec. 858. The weight of authority is that the power of equity to reform a written instrument which does not correctly express the intention of the parties because of fraud, accident or mistake, extends to contracts which are by the Statute of Frauds required to be in writing, whenever the refusal of the relief sought would amount to permitting one of the parties to perpetrate a fraud upon the other. 29 Am. & Eng. Ency. of Law, 2nd ed., 847. In this case, if the allegations are true, it would be a fraud on the complainants to permit the defendants, after they have had all the benefits of a contract which the demurrer admits they intended to and supposed they had executed, now to escape liability on the ground that they by mistake signed some other paper than the one intended, and that what they intended to sign is not in writing.

It is also claimed there is a misjoinder of complainants, and that the city of Peoria and the board of school inspectors of the city of Peoria have nothing in common in this suit. Sec. 7 of chap. 13 of the charter of the city of Peoria provides that the bond to be given by the treasurer appointed by the board of school inspectors shall be "to the city of Peoria," and that a suit on the bond shall be in the name of the city of Peoria, under the direction and supervision of said board of inspectors, and when any money shall be collected thereon it shall be paid over as the board shall direct. The board of school inspectors is the trustee that has the disposal of the moneys, if any are to be received under the bond, and has the supervision over the prosecution of the suit, and therefore has such an interest in the suit that it is a proper party, and the proper obligee, the city of Peoria, must be a party.

We are of the opinion that the bill states a cause of action and the cause is therefore reversed with directions to overrule the demurrer.

*Reversed and remanded, with directions.*